S. W. WALL v. WILLIAMS & ROBBINS, Executors.

*Maintenance—Contract—Support.*

1. Where, for a valuable consideration, one contracts to support another, he cannot recover in an action for services rendered such other party in nursing and attending to him in sickness.

2. So, where A leased B's farm for a term of years, and the lease provided that he should furnish B and his wife plenty to support them, and should have the excess made on the farm, and B was stricken with a lingering sickness, in which A nursed and tended him ; *It was held,* that A could not recover in an action against B's estate for such services.

( *Wall* v. *Williams*, 91 N. C., 477, cited and approved).

This was a CIVIL ACTION tried before *Montgomery, Judge,* at July Special Term, 1884, of the Superior Court of RANDOLPH County.

The plaintiff alleged in his complaint that Daniel Williams died in the month of June, 1882, leaving a last will and testament, in which he appointed the defendants his executors, and they were duly qualified as such ; that the testator was about eighty years of age when the plaintiff commenced rendering the services hereinafter stated, and was in feeble health and weak in body and mind ; and after the death of his wife on the 8th day of January, 1880, required constant care and attention, and was sick and afflicted with chronic diarrhœa and other offensive diseases, and was unable to care for himself ; that after the first day

of January, and until his death, the plaintiff, assisted by his wife, rendered to him all such services as were necessary, such as daily nursing and daily waiting upon him, administering medicine, washing and cleansing his body, as well as his bedding and clothing, from the filth engendered by his loathsome disease.

B. Milliken became guardian after the disease had attacked the testator, and after the alleged services had begun.

The defendants deny the liability alleged by plaintiff, and set up, for a further defence, the following written contract, namely:

"STATE OF NORTH CAROLINA,
"Randolph County.

"I, Daniel Williams, of said county, agree with S. W. Wall, to lease his farm to said Wall five years, and he is to furnish him and his wife plenty for to support them, and furnish them with fire-wood in their yard.

"Now the said Wall is to have possession on the 1st day of October, 1879, and to have all he can make after we get our support. I, Daniel Williams, agree to keep what provisions that I have on hand the first day of October, 1879, to support myself and wife and stock, and at the end of five years the said Wall is to furnish the same amount, or leave that much with us. The said Williams is to keep one milk cow and calf, one or two hogs, etc. The above agreement is to be in full force the first day of October, 1879.

"Signed in the presence of B. Milliken and left in his possession, May 9th, 1879.

"DANIEL WILLIAMS, [Seal].
"S. W. WALL, [Seal].

"Witness: Benj. Milliken."

The defendants also set up a counter-claim against the plaintiff for cutting and carrying away timber from the land of the testator.

The plaintiff tendered the following issues to be submitted to the jury:

1st. Did the plaintiff render the services claimed in the complaint?

2d. Were such services rendered at the request of the testator, or of any one authorized to make such request?

And the defendant tendered the following issues:

1st. Did the plaintiff cut and appropriate to his own use, during the testator's life, timber growing on the land?

2d. If so, what was the value of the timber so cut and appropriated?

The defendants' counsel referred the court to this case, as reported in 91 N. C. Reports, 477, and especially to the intimation of this Court that the services rendered, and attention bestowed upon the testator, as charged in the complaint, are comprehended in plaintiff's undertaking to furnish him and his wife plenty to support them, during the lease, if they shall so long live.

The plaintiff admitted the execution of the undertaking, and that he did not expect to change the proof offered on the first trial.

The Court held that the services rendered, and the attention bestowed, if proved, were comprehended in the undertaking, and would not entitle the plaintiff to a recovery, and declined to submit plaintiff's issues, and submitted those tendered by the defendants, to which plaintiff excepted.

There was a verdict in behalf of the defendants, and judgment was rendered accordingly, from which the plaintiff appealed.

*Messrs. Scott & Caldwell* and *W. S. Ball,* for the plaintiff.
*Messrs. M. S. Robins* and *J. T. Morehead,* for the defendants.

ASHE, J. (After stating the facts). The only question presented for our determination, arises upon the construction of the contract between the plaintiff and the testator. The plaintiff contends that the word *support,* as used in the instrument, can only be interpreted as meaning *food* or *provisions,* and the defendant insists that the word is not to be construed in any such restricted

sense, but the use of it in the contract was intended to compre-
hend a reasonable and comfortable maintenance, suitable to the
estate, the mode of living, and the habits of life of the person to
be supported. When the case was before us at a former term,
91 N. C., 477, it was then said in the opinion delivered by
SMITH, C. J.: "Are not the service and attention incident to
those being supported, though in the present case they were
far more onerous than perhaps ever contemplated by either party?
Would a total neglect of the most common wants, when living
on the same farm, be consistent with the agreement for a support
to be afforded by the plaintiff? Is the word to be construed as
restricting the contract to the furnishing of food merely, and
fuel for cooking and warmth?"

The point now involved did not necessarily arise there, but it
will be seen from the above extract, that the Court leans to the
construction now contended for by the defendants, and after fur-
ther consideration of the subject, we think that is the proper
construction of the instrument.

The plaintiff's stipulation in the contract, is to furnish "*plenty
for to support*" Daniel Williams and his wife, and he, S. W.
Wall, is " to have all he can make after we get our support."

It certainly was not contemplated by the parties that the land
should be sown or planted in grain. Wall, under the contract,
might have sown cotton or tobacco, in which case, he would be
bound by the contract to furnish a *support* out of the proceeds
of the crops. It is not a stipulation for a certain part of the
crops, or for a *support* out of the premises—the corn or grain
raised on the land. The defendant, by the contract, is entitled
to a support—a plentiful support. What does that mean? Ac-
cording to Webster, it means " maintenance, subsistence, or an
income sufficient for the *support* of a family," and maintenance
means "*sustenance, support by means of supplies of food, clothing
and other conveniences.*" And this liberal construction of the
word *support*, in its use with regard to persons who have been
contracted with for their maintenance, was held in the case of

*Whilden* v. *Whilden,* Riley, Law and Equity, 205. There the property of a testator was directed to be sold, and the money invested in bank stock, for the *support* of his children, until the youngest should come to the age of twenty-one, and he left several children who were of age, and others minors; it was decided as the income was small, it should be applied to support and *educate* the minor children. We cite this case to show that support is held to mean something more than mere food.

The only other case we have found bearing on the question, is another South Carolina decision, *Ellerbe* v. *Ellerbe,* Spears' Eq., 328. There a "reasonable and competent support" was provided for the testator's daughter and grandson. The Court held, that as she had an ample estate of her own, she could not get a support out of the estate of the testator, William Ellerbe. The Court held in its opinion, that a reasonable and comfortable support was such "maintenance as was necessary, suitable and proper, in the situation of the party," and in support of his position, the Chancellor who delivered the opinion, cited the case of *Whilden* v. *Whilden, supra.* The stipulation is to "furnish a *plenty* for to *support* Williams and his wife." Plenty is from the Latin *plenus*—full. Plenty of support must mean a full support—not merely sufficient provisions, but, according to the definition and the authorities cited, "in full;" such other conveniences and necessaries as were reasonable and suitable to make Williams and his wife comfortable. If it turns out that he made a bad bargain, which does not seem to have been the case, he had no right to complain. He went into it with his eyes open. He knew that he, Williams, was old and feeble, and had passed, by a decade, the Scriptural limit of human life, and was likely to be afflicted with the maladies incident to old age. If these maladies were greater, or more offensive than he had expected or hoped, he must be held to abide the consequences of his contract.

There is no error. The judgment of the Superior Court is affirmed.

No error.                      Affirmed.