## STATE v. JAMES ROBINSON.

(Filed 5 November, 1952.)

**1. Bastards § 1: Criminal Law § 21—**

The offense proscribed by G.S. 49-2 is the willful neglect or refusal of a parent to support his or her illegitimate child, and the question of paternity is incidental thereto, and therefore a judgment as of nonsuit in such prosecution does not constitute an adjudication on the issue of paternity and will not support a plea of former acquittal in a subsequent prosecution under the statute, the offense being a continuing one.

**2. Bastards § 1—**

In a prosecution of a father for willful neglect or refusal to support his illegitimate child, the issue of paternity must first be determined before and separate from the determination of the issue of guilt or innocence of the offense charged.   G.S. 49-2, G.S. 49-7.

**3. Bastards § 7—**

In a prosecution under G.S. 49-2 an affirmative finding that defendant willfully failed and refused to support his illegitimate child does not constitute a verdict of guilty, but merely embraces facts upon which a verdict of guilty should be predicated, and where there is no verdict a new trial must be awarded.

APPEAL by defendant from *Sink, J.,* at April Term, 1952, of CATAWBA.

Criminal prosecution upon a bill of indictment, a true bill found at April Term, 1952, of Catawba County, charging "that James Robinson . . . on the 25th day of February in the year of our Lord one thousand nine hundred and 52, with force and arms, at and in the county aforesaid, did unlawfully and willfully fail, neglect and refuse to support and maintain his illegitimate child, Kathy Louise Smith, which he had theretofore begotten upon the body of Carrie Jean Smith . . .," etc.

Upon the call of the case for trial, on said bill of indictment and prior to the impaneling of the jury, and before the entering of any plea, defendant entered a plea of "former jeopardy" and "former acquittal."

In this connection the record shows: That on 1 December, 1951, a warrant issued out of the Municipal Court of city of Hickory upon affidavit charging that "James Robinson on or about the 1st day of Decem-

ber, 1951, in Catawba County . . . did unlawfully and willfully neglect and refuse to support and maintain his illegitimate child Kathy Louise which he . . . did willfully beget upon the body of Carrie Jean Smith" etc.; that the defendant pleaded not guilty; and that on 4 January, 1952, the Municipal Judge entered judgment as follows: "At close of State's evidence, motion for nonsuit allowed." (This is the judgment on which defendant's plea of "former jeopardy" and "former acquittal" is based.)

The record also shows: That on 12 January, 1952, another warrant issued out of the Municipal Court of the city of Hickory upon affidavit in substantially the same form as that on which the warrant of 1 December, 1951, was issued, except that the date of the alleged offense is 4 January, 1952; that upon call of this criminal action defendant filed a plea of "former jeopardy" and "former acquittal,"—the same as that hereinabove set forth; that defendant pleaded "Not guilty"; that on 30 January, 1952, the Judge of the Municipal Court rendered a special verdict on defendant's plea of former jeopardy, and adjudged that defendant is not guilty of the offense charged in the warrant; that the State appealed from this judgment to Superior Court; and that on 12 February, 1952, upon the call of the appeal, the presiding judge of Superior Court, holding that the Municipal Court of the city of Hickory had no authority to render any kind of special verdict, remanded the matter for proper judgment in said court.

And the record further shows that in said Municipal Court defendant renewed "his plea of former jeopardy and former acquittal" and tendered to the court this issue: "Has the defendant been formerly acquitted of the offense wherewith he now stands charged?"; that the court refused to answer the issue, and thereupon defendant pleaded "Not guilty"; that after hearing the evidence, the court found defendant to be guilty, and rendered judgment dated 14 March, 1952. And it is stipulated of record that defendant appealed from this judgment, and that same was duly docketed in Superior Court of Catawba County, and stood for trial at the April Term, 1952, of said court; at which term a true bill of indictment was found as first hereinabove stated.

The court denied the pleas. Defendant excepted. Exception No. 1.

Thereupon defendant resubmitted in writing the same issue as to former acquittal. It was denied by the court, and to this ruling defendant excepted. Exception No. 2.

The court stated to counsel for defendant that these two issues would be submitted to the jury:

"1. Is the defendant the father of the illegitimate child, as alleged by the State?

"2. If so, has the defendant willfully failed and refused adequately to provide for such illegitimate child, as alleged by the State?"

STATE *v.* ROBINSON.

To these issues, and each of them, defendant, in apt time, objected and excepted. Exception No. 3.

Defendant entered his plea of "not guilty."

And upon the trial in Superior Court Carrie Jean Smith as witness for the State testified in summary as follows: That commencing in February and on various occasions during March and up into April, 1951, she had sexual intercourse with James Robinson, the defendant; that she became pregnant in the latter part of February but did not know it until she went to see a doctor; that she did not tell defendant about it; that he never discussed it with her; that he never came back to see her; that the baby, a girl, was born 29 November, 1951, in Hickory Memorial Hospital, and was named Kathy Louise Smith; that defendant is the father of her child; that she made demand on defendant in February of this year, and, quoting her, "he made no reply when I told him I expected support"; and that he has not provided any support for the child, nor has he paid any part of the hospital or medical expenses.

Defendant, reserving exception to denial of his motion for judgment as of nonsuit entered when the State first rested its case, offered in evidence warrant, dated 1 December, 1951, issued out of the Municipal Court of the city of Hickory, N. C., in the case of *S. v. James Robinson,* together with judgment of the court rendered in the case on 4 January, 1952, allowing motion for nonsuit. The State's objection sustained as to the judgment and adjudication; overruled as to the warrant.

Defendant objected to the ruling of the court disallowing the judgment and adjudication, and to each of them, defendant, in apt time, excepts. Exception No. 7.

The case was submitted to the jury on the two issues, in accordance with statement of the court to counsel for defendant as hereinabove copied, to each of which the jury answered "Yes." Nevertheless there is no verdict as to guilt of defendant.

Motion of defendant to set aside the verdict on each issue, as being contrary to the weight of evidence, and for errors committed in the progress of the trial assigned, and to be assigned. Motion denied. Defendant excepted. Exception No. 4.

Thereupon the court entered judgment that defendant be confined in the common jail of Catawba County six months and assigned to work the roads as provided by law, and pay the costs. Defendant appeals therefrom to the Supreme Court, and assigns error.

*Attorney-General McMullan and Assistant Attorney-General Love for the State.*

*Theodore F. Cummings for defendant, appellant.*

WINBORNE, J.   Decision on this appeal as to the issue of paternity turns upon the answer to this question: Does the granting of a motion under G.S. 15-173 for judgment of nonsuit, or verdict of not guilty in a criminal prosecution, charging defendant with willful neglect or refusal to support and maintain his illegitimate child, constitute a negative finding on the issue of paternity?   If so, the plea of former acquittal set up by defendant would be well taken.   But if not, then the plea of former acquittal must fail.   And in the light of the statutes, G.S. 49-2, G.S. 49-7, as interpreted and applied in decisions of this Court, we are of opinion, and hold that such judgment of nonsuit does not constitute an adjudication on the issue of paternity.

G.S. 49-2 provides that "any parent who willfully neglects or who refuses to support and maintain his or her illegitimate child shall be guilty of a misdemeanor . . ."

The only prosecution contemplated under this statute is that grounded on the willful neglect or refusal of a parent to support his or her illegitimate child,—the mere begetting of the child not being denominated a crime.   *S. v. Dill,* 224 N.C. 57, 29 S.E. 2d 145; *S. v. Stiles,* 228 N.C. 137, 44 S.E. 2d 728; *S. v. Bowser,* 230 N.C. 330, 53 S.E. 2d 282; *S. v. Thompson,* 233 N.C. 345, 64 S.E. 2d 157.   See also *S. v. Tyson,* 208 N.C. 231, 180 S.E. 85.

The question of paternity is incidental to the prosecution for the crime of nonsupport.   *S. v. Summerlin,* 224 N.C. 178, 29 S.E. 2d 462; *S. v. Bowser, supra; S. v. Stiles, supra; S. v. Thompson, supra.*

Moreover, this statute, as interpreted by this Court, creates a continuing offense.   *S. v. Johnson,* 212 N.C. 566, 194 S.E. 319; *S. v. Bradshaw,* 214 N.C. 5, 197 S.E. 564; *S. v. Davis,* 223 N.C. 54, 25 S.E. 2d 164.

And G.S. 49-7, after prescribing jurisdiction of the courts in such matters, declares that "The court before which the matter may be brought shall determine whether or not the defendant is a parent of the child on whose behalf the proceeding is instituted," and that, "After this matter has been determined in the affirmative, the court shall proceed to determine the issue as to whether or not the defendant has neglected or refused to support and maintain the child who is the subject of the proceeding."

Thus it seems clear that the Legislature intended that the issue of paternity first be determined before, and separate from determination on the issue of guilt or innocence of the offense charged.

Indeed, in the case of *S. v. Wilson,* 234 N.C. 552, 67 S.E. 2d 748, *Barnhill, J.,* in a concurring opinion, summarizes decisions of this Court by saying: "The only prosecution contemplated under the statute is grounded on the willful neglect or refusal of a parent to support his illegitimate child.   The mere begetting the child is not denominated a crime.   The question of paternity is incidental to the prosecution for the

crime of nonsupport—a preliminary requisite to conviction," and then concludes by saying: "Hence a verdict of not guilty on the charge of willful nonsupport does no more than find the defendant not guilty of the crime laid in the bill. The verdict could not be construed to be a verdict of not guilty of begetting the child." This declaration, when delivered, was *obiter dictum.* But, being so pertinent to situation in hand, it is here adopted as the law of the present case.

Hence the verdict on the first issue, that is, as to paternity, will stand. However, since there is no verdict as to guilt of defendant on the fact found as to the offense charged, there must be a new trial on the second issue,—with instruction that if the issue be answered "Yes" the jury should return a verdict of guilty, or guilty as charged.

New trial.