STATE v. JAMES MONROE LOVE.

(Filed 30 September, 1953.)

1. **Bastards § 7—**

   While in a prosecution of defendant for willful failure and refusal to support his illegitimate child, the State has the burden of satisfying the jury beyond a reasonable doubt that defendant is the father of the child and that he has willfully neglected or refused to support the child, it is not required that the question of paternity should be determined in a separate and distinct action, but it may be determined in the main prosecution for the offense. G.S. 49-2.

2. **Bastards § 1—**

   The word "support" as used in G.S. 49-2 is not restricted merely to food, but includes food, clothing and other necessaries, together with medical assistance reasonably required for the preservation of the health of the child, and thus the obligation to support the child applies even in the case of a newly born baby.

APPEAL by defendant from *Godwin, Special J.,* at February 1953 Special Term of CASWELL.

Criminal prosecution begun in Caswell County Recorder's Court upon a warrant issued on affidavit of Alene Garland, sworn to 23 April, 1951, and, on appeal thereto, tried in Superior Court upon the warrant as there amended, charging, in substance, that James Monroe Love did on ...... day of April, 1951, after notice of paternity and demand for support, unlawfully and willfully fail and neglect to provide adequate support and maintenance for his illegitimate minor child, Earl Lea, age one month, begotten upon the body of Alene Garland, against the form of the statute, etc.

Upon arraignment defendant pleaded "Not guilty."

STATE *v.* LOVE.

Thereupon the State offered the testimony of Alene Garland, the prosecuting witness, then 20 years of age, briefly recited as follows: "I know James Monroe Love . . . I started going with him in 1949 and stopped in 1951. He came to see me every Saturday and Sunday and Wednesday night, and sometimes he was over there Monday morning . . . I wasn't going with anybody else at the time. After he got me pregnant, I told him about it, and he promised to slip me off and marry me. I don't know why he didn't . . . My child's name is Earl Lea, and James Monroe Love is the father of the baby . . . born March 22, 1951. I wrote him (Love) a letter after the child was born. I went to him and told him and the word he told me . . . he wished I hadn't let his daddy know . . . about it. My mother went and told his father about it before the baby was born. He promised to take me and marry me. He said he would take care of the baby when it was born. He has provided nothing for the child since it was born . . . I have had medical bills since the birth of the child. He hasn't given me nothing since the birth of the child. He hasn't furnished anything in the way of food and clothing . . ."

Then on cross-examination of the witness, this testimony was given by her: "When the baby was born, I nursed it at my breast . . . from the time it was born until the time the warrant was taken out. After the baby was born, I didn't see him (Love) any more than at the store or somewhere like that. I wrote him a letter to come over there after the baby was born. I told him to come over, the baby was there, to help get him some clothes, and I wrote the letter directly after the baby was born. I guess the baby was about a week old after I wrote the letter. He didn't come and he has never contributed anything to that baby's support. The baby needed underclothes and a gown to put on. I didn't have nothing to prepare them with. My sister gave me sufficient clothes to take care of him when he was born, but I sent him (Love) word, too . . . I bought his first clothes after he got a month old,—after the warrant was issued."

The State also offered the child, Earl Lea, in evidence, and exhibited him to the jury for inspection.

At the close of the State's evidence, defendant moved for judgment as of nonsuit (1) on the issue of paternity, and then (2) on the issue of nonsupport. Both motions were overruled respectively, and defendant excepted to each ruling. Defendant offered no evidence, and at the close of all the evidence renewed each of the motions, and they were overruled respectively, and defendant entered exception to each ruling.

The following issues were submitted to the jury, under instructions of the court:

(1) Is the defendant James Monroe Love the father of Earl Lea Garland?

(2) Did the defendant willfully fail to support the said child between the time of its birth on March 22, 1951, and April 22, 1951, after notice and request for support?

(3) Is the defendant guilty, as charged in the warrant?

(The record fails to show that defendant objected to the issues at the time they were submitted.)

The record recites that: "The charge of the court is not incorporated in the case on appeal for the reason that no exceptions are taken to the charge of the court."

The jury answered both the issue of paternity and the issue of non-support against the defendant, and found him guilty of nonsupport of Earl Lea Garland as charged in the warrant. Thereupon defendant moved (1) to set aside the verdict, as being "against the greater weight of the evidence," and (2) for a new trial "for errors committed in the progress of the trial." The motions were overruled and defendant excepted.

Judgment was pronounced in accordance with the verdict, and defendant objected, and excepted thereto, and appeals to Supreme Court and assigns error.

*Attorney-General McMullan and Assistant Attorney-General Love for the State.*

*D. Emerson Scarborough for defendant, appellant.*

WINBORNE, J. Defendant, on this appeal, raises basically two questions under his assignments of error predicated upon exceptions to denial of his motions for judgment as of nonsuit, as above set forth. (1) Conceding that there is sufficient evidence to go to the jury as to the issue of paternity, should this issue be determined in a "separate and distinct action" and by a "separate and distinct trial" from the issue as to willful nonsupport? And (2) the evidence disclosing that the child nursed at his mother's breast, is there sufficient evidence to take the case to the jury on the issue as to whether defendant willfully neglected or refused to support and maintain his child during the period of one month next after his birth?

I. As to the first question, this Court held in the case of *S. v. Spillman,* 210 N.C. 271, 186 S.E. 322, that it is not necessary that defendant's paternity of the child should be first judicially determined, but that the State must prove on the trial, first, defendant's paternity of the child, and then his willful neglect or refusal to support the child. See also *S. v. Bradshaw,* 214 N.C. 5, 197 S.E. 564.

And a review of subsequent cases on the subject, considered by this Court, it is seen that in the trial of criminal prosecutions under the stat-

ute, referred to as "An Act Concerning the Support of Children of Parents Not Married to Each Other," Chapter 49 of General Statutes, the practice has been, and is to submit to the jury issues, first, as to defendant's paternity of the child, and, secondly, as to willful neglect or refusal of defendant to support and maintain his child, and, a third, as to guilt of defendant. See *S. v. Hayden,* 224 N.C. 779, 32 S.E. 2d 333; *S. v. Stiles,* 228 N.C. 137, 44 S.E. 2d 728; *S. v. Ellison,* 230 N.C. 59, 52 S.E. 2d 9; *S. v. Bowser,* 230 N.C. 330, 53 S.E. 2d 282; *S. v. Robinson,* 236 N.C. 408, 72 S.E. 2d 857.

Indeed, in *S. v. Robinson, supra,* only two issues were submitted to the jury, first, as to paternity, and second, as to nonsupport. The jury answered both issues in the affirmative, but did not return a verdict of guilty. On appeal to this Court the verdict on the first issue was permitted to stand. But since there was no verdict as to guilt of defendant on the fact found as to the offense charged, a new trial was ordered on the second issue, with instruction that if the issue be answered "Yes" the jury should return a verdict of guilty, or guilty as charged. This order was made solely for the reason stated, and not that there should be separate trials on the issues submitted.

In this connection the State aptly contends in brief filed that three issues are required to be submitted in a single case, and that the trial court should instruct the jury to consider them in the order in which they appear, that is: That the issue of paternity should be considered first. That if it be answered in the negative, the other issues would not be considered. But if answered in the affirmative, the jury would proceed to consider the second issue, as to willful nonsupport; that if it be answered in the negative, the answer to the third issue would be "not guilty." But if the first and second issues be answered in the affirmative, the jury would answer the third issue "guilty"; that is, the answer to the third issue would follow as a matter of law.

This argument is predicated upon proper instruction that the burden is upon the State to satisfy the jury beyond a reasonable doubt as to facts found. And it is not amiss to say that the issues may be submitted orally or in writing. However, to submit written issues would seem to be the better practice.

II. As to the second question: The statute, G.S. 49-2 declares that "Any parent who willfully neglects or who refuses to support and maintain his or her illegitimate child shall be guilty of a misdemeanor, and subject to such penalties as are hereinafter provided." Defendant contends that "to support and maintain" as used in the statute means to provide food. Such meaning is too restrictive.

In 50 American Jurisprudence 870, speaking of the definition and nature of the term as it relates to support of persons, the author states:

"Maintenance and support, it has been said, are not words of art, but have a relative meaning. The word 'support' is generally used to mean articles for the sustenance of persons, as food, clothing, and other conveniences. In some cases, the word 'support' will include medicines and medical services as necessaries."

This Court, too, has considered the meaning of the word "support." In *Wall v. Williams* (1885), 93 N.C. 327, the Court had under consideration a contract to furnish "plenty for to support" named persons. *Ashe, J.,* writing for the Court, said: "What does that mean? According to Webster it means 'maintenance, subsistence, or an income sufficient for the support of a family,' and 'maintenance' means 'sustenance, support by means of supplies of food, clothing and other conveniences.' And this liberal construction of the word 'support,' in its use with regard to persons, who have been contracted with for their maintenance, was held in the case of *Whilden v. Whilden,* Riley Law & Equity 205. We cite this case to show that support is held to mean something more than mere food."

To like effect is the decision in *Clark v. Hay,* 98 N.C. 421 (1887), There the Court, considering the meaning of the term "for the support of the family," held that it is confined to goods bought for the direct benefit of the members of the family, such as food, clothing and other necessaries . . .

And in *S. v. Clark,* 234 N.C. 192, 66 S.E. 2d 669, opinion by *Devin, C. J.,* speaking of the obligation of a husband to provide adequate support for his wife, had this to say: " 'Support' as the word is used in the statute means personal support, maintenance; the supplying of food, clothing and housing suitable to their condition in life and commensurate with the defendant's ability; together with medical assistance reasonably required for the preservation of health."

The interpretation of the meaning of the term "support and maintain" as thus enunciated in decisions of this Court in regard to persons would seem appropriate in considering the meaning of the term as it is used in the statute under which defendant is convicted. G.S. 49-2. Hence this Court holds that the obligation of a parent "to support and maintain his or her illegitimate child," within the purview of the statute G.S. 49-2, is not restricted merely to providing food. It includes the supplying of food, clothing and other necessaries, "together with medical assistance reasonably required for the preservation of health" of the child. *S. v. Clark, supra.* And this obligation to the child applies even in the case of a newly born baby.

Applying this principle of law to the case in hand, the evidence shown in the record is sufficient to support a finding by the jury, beyond a

reasonable doubt, that defendant willfully neglected or refused to support and maintain his illegitimate child as charged in the warrant.

Hence in the judgment from which appeal is taken, there is

No error.