CALVIN GRADY MEECE v. JOHN HENRY DICKSON, JR., (AND C. WAL-
TER ALLEN APPOINTED GUARDIAN AD LITEM BY THE COURT).

(Filed 6 April, 1960.)

**1. Automobiles § 9—**

To "park" means something more than a temporary or momentary
stoppage on the highway for a necessary purpose, and neither G.S. 20-161
nor G.S. 20-129 are applicable to a mere temporary stop for a neces-
sary purpose when there is no intent to break the continuity of travel.

**2. Automobiles § 41e—**

Where plaintiff's own evidence discloses that defendant's vehicle was
stopped on a paved highway in its proper lane of travel because it had
become disabled, and had been there for only a few minutes before plain-
tiff ran into its rear, and that the section of the highway was straight
for more than four-tenths of a mile, nonsuit is proper for failure of
evidence of negligence on the part of defendant in so stopping on the
highway.

**3. Evidence § 20: Pleadings § 29—**

Where plaintiff offers in evidence allegations of the answer averring
that the defendant's automobile was stopped in its proper lane of travel
and had been in a disabled condition for several minutes prior to the
time in question, plaintiff is bound by such averments which he himself
has introduced in evidence.

APPEAL by plaintiff from *Morris, J.,* at September 1959 Civil Term,
of BUNCOMBE.

Civil action to recover of defendant for personal injuries allegedly
sustained by reason of actionable negligence of defendant in an auto-
mobile collision on Sweeten Creek Road in Buncombe County, North
Carolina, when automobile of plaintiff came in contact with rear of
automobile of defendant.

Plaintiff alleges in his complaint that defendant "had said automo-
bile on said highway in the right-hand lane and travel portion of said
highway in the nighttime without any lights at all on said motor
vehicle"; that upon information and belief "defendant had said mo-
tor vehicle upon said highway" and "stopped on said highway * * *
for a period of at least 10 or 15 minutes * * * immediately before the
collision"; that the said defendant * * * "had failed to display red
flares or lanterns at the rear of said motor vehicle and * * * to make
any signals and give any warning to the other vehicles traveling upon
said highway"; in all of which respects defendant was negligent—
proximately causing injury and damage to plaintiff.

On the other hand, defendant, answering, denies that he was negli-
gent in any respect, and by way of first further answer and defense

alleges in pertinent part * * * "that the defendant was driving said automobile carefully and prudently, at a reasonable rate of speed on his own right-hand side of the road, which was the east lane of the two lanes of traffic; that an animal ran across the road in front of the defendant, and in an effort to avoid striking the animal, the defendant applied his brakes and stopped the forward motion of his automobile, and also caused the motor of said automobile to stop or choke down; that although said automobile had been running satisfactorily up until this time and place, the car refused to start, although the signal lights of said automobile would burn; that said automobile was stopped in the right lane for northward traffic, or the east lane; that the defendant stationed two former passengers to the rear of said car to warn traffic traveling north of said car, and one former passenger to the south to warn traffic approaching from the north, traveling southwardly; that the said car driven by the defendant had been in this disabled condition for several minutes * * *" etc., describing in detail his primary defense.

And defendant also pleaded, briefly stated, insulated negligence, and contributory negligence on part of plaintiff.

Upon the trial in Superior Court plaintiff offered in evidence among other things not pertinent to questions raised on this appeal (1) paragraph 5 of the complaint which reads as follows: "That on said day at about 8:15 o'clock P. M., the said defendant had said automobile upon one of the public highways of the State of North Carolina, particularly upon U. S. Highway No. 25-A, which highway is also a public highway of the State of North Carolina and commonly known as Sweeten Creek Road, in Buncombe County, North Carolina," and the corresponding paragraph 5 of the answer which reads as follows: "That the allegations of paragraph 5 are admitted."

(2) "That part of the defendant's further answer and defense reading as follows: 'That at or about 8:15 P. M. on October 23, 1958, the defendant was driving a 1947 Chevrolet four-door sedan northward on U. S. Highway 25-A, which is commonly called Sweeten Creek Road, in Buncombe County, south of Asheville.' "

(3) "And that part of defendant's further answer and defense which reads as follows: 'That said automobile was stopped in the right lane for northbound traffic or the east lane.' "

(4) "And that part of the further answer and defense which reads as follows: 'That the said car driven by the defendant had been in this disabled condition for several minutes.' "

And the parties stipulated "that the automobile alleged to have

been operated by the defendant John Henry Dickson, Jr., was owned by John Henry Dickson, Sr."

And upon the trial plaintiff, testifying as witness for himself, gave substantially this narrative: "On October 23, 1958, I was involved in a collision with John Henry Dickson, Jr. * * * on Highway 25-A, commonly known as Sweeten Creek Road * * * just north of Edgewood Road * * * approximately a quarter of a mile south of the point of the accident * * * I was traveling north in the direction of Asheville. The collision occurred about 8:15 at night.

"With reference to curves or hills the highway has a curve in it here. You start downgrade in here and up around over, this is a fill over here. With reference to hills there is a light dip in the road right here. You start down a grade like this and goes up just like this. With reference to the dip the Dickson car was approximately 30 feet here. After I start up towards Asheville, north 30 feet from the dip, he was parked from this curve approximately 60 or 75 feet. The elevation of the hill toward Hendersonville, from the scene of the collision, or from the dip I will say, is about 25 degrees, something like that. The elevation of the highway from the dip as the highway proceeds toward Asheville, north, I would say is approximately 25 or 30 degrees. * * * The shoulder on the road immediately beside where the Dickson car was parked * * * was about 10 feet wide. * * * in this dip there is a big wide place 30 or 40 feet, a lot of times see tractors and trailers parked there. The pull-off area there, I would say is about 40 feet wide. From where the Dickson car was parked, that wide pull-off place, I would say was about 30 feet along here, back, downgrade; * * * it is upgrade from here to this curve. The shoulder of the highway from the point where the Dickson car was parked south to the wide pull-off area is about ten feet * * * and also all along the road where there is plenty of shoulder. I observed how wide the shoulder was north of the Dickson car * * * it was approximately ten feet wide all down through here * * *."

Then in answer to question as to when was the first time that he observed the Dickson car, plaintiff testified, briefly stated, "I had gone down the dip and started up the rise before I even seen it, about 30 feet from it * * * my headlights picked him up at that time." And plaintiff, continuing, said: "He didn't have any lights on his car. No lights at all. I never saw any flagman or no warnings of no kind. I have an opinion * * * as to what speed I was traveling before and at the moment of the collision with the Dickson car— about 50 miles per hour * * * ."

Then under cross-examination plaintiff testified in pertinent part:

"I am very familiar with the Sweeten Creek Road. I have traveled it practically every day for five or six years. I knew the area which I was traveling at the time of this accident. I was driving a 1957 Chevrolet station wagon; that car was in good condition. It had good brakes. It had good headlights on it."

And plaintiff continued: "* * * I was traveling north * * * the road south of the point of collision is unobstructed for .3 of a mile, and toward * * * the north I would say .1 of a mile. For all intents and purposes that road is not level. It is straight * * * The way I was traveling from the south to the north I was going slightly downgrade. — I estimate the grade to be 25 degrees * * * ."

And plaintiff concluded his testimony by saying: "As I drove down the highway that night * * * I did not see the flagman to the rear of the Dickson car. I did not cut my wheels in an attempt to pass to the left. I did not blow my horn. I did not apply my brakes."

At the conclusion of plaintiff's evidence defendant moved for judgment as of nonsuit, and the court being of opinion that same should be allowed entered judgment that plaintiff's action be, and the same was "nonsuited."

To the entry of judgment in accordance therewith plaintiff excepted and gave notice of appeal, and appeals to Supreme Court and assigns error.

*James W. Regan, Oscar Stanton for plaintiff, appellant.*
*Meekins, Packer & Roberts, for defendant, appellee.*

WINBORNE, C. J.  Plaintiff assigns as error the ruling of the trial court in granting defendant's motion for judgment as of nonsuit.

In this connection it is appropriate to refer to two statutes, G.S. 20-161 and G.S. 20-134, each in pertinent part pertaining to the operation of motor vehicles upon the highways in this State.

G.S. 20-161 declares "(a) No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway: Provided, in no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles there-

on, nor unless a clear view of such vehicle may be obtained from a distance of two hundred feet in both directions upon such highway;

"Provided further (not pertinent here) * * *

"Provided further in the event that a truck, trailer or semi-trailer be disabled upon the highway that the driver of such vehicle shall display, not less than two hundred feet in the front and rear of such vehicle, a warning signal; that during the hours from sunup to sundown a red flag shall be displayed, and after sundown red flares or lanterns. These warning signals shall be displayed as long as such vehicle is disabled upon the highways."

(b) Not pertinent here.

And (c) declares that *"The provisions of this section* shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such an extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position." (Emphasis supplied)

To "park" means something more than a mere temporary or momentary stoppage on the highway for a necessary purpose. *Stallings v. Transport Co.,* 210 N.C. 201, 185 S.E. 643. Hence in *Skinner v. Evans,* 243 N.C. 760, 92 S.E. 2d 209, the Court held that the temporary stopping of the automobile upon the highway under the circumstances there portrayed was not violative of the provisions of G.S. 20-161(a) as amended pertaining to stopping on a highway. See among other cases *Peoples v. Fulk,* 220 N.C. 635, 18 S.E. 2d 147; *Leary v. Bus Corp.,* 220 N.C. 745, 18 S.E. 2d 426; *Pike v. Seymour,* 222 N.C. 42, 21 S.E. 2d 884; *Morgan v. Coach Co.,* 225 N.C. 668, 36 S.E. 2d 263; *Morris v. Transport Co.,* 235 N.C. 568, 70 S.E. 2d 845.

Moreover, G.S. 20-161 has no reference to a mere temporary stop for a necessary purpose where there is no intent to break the continuity of travel. *Royal v. McClure,* 244 N.C. 186, 92 S.E. 2d 762. See also *Basnight v. Wilson,* 245 N.C. 548, 96 S.E. 2d 699.

Indeed plaintiff offered in evidence an uncontradicted extrajudicial declaration of defendant that the defendant's automobile was on the highway in disabled condition. In so doing plaintiff is bound thereby. *Sowers v. Marley,* 235 N.C. 607, 70 S.E. 2d 670.

Furthermore, G.S. 20-134 provides that "Whenever a vehicle is parked or stopped upon a highway, whether attended or unattended during the times mentioned in G.S. 20-129, there shall be displayed upon such vehicle one or more lamps projecting a white light under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle, and projecting a red light visible under

like conditions upon a distance of five hundred feet to the rear * * *."
Thus it is seen that this section is inapplicable unless there be a parking in violation of G.S. 20-161.

In the light of the pleadings and the evidence offered by plaintiff it would seem that plaintiff exculpates defendant from negligence in respect of these statutes.

It appears that defendant's automobile was in disabled condition and was on the highway for only a few minutes before plaintiff ran head-on into the rear of it on a section of highway susceptible of being characterized as a straightaway, — that is straight for more than four-tenths of a mile.

The judgment is
Affirmed.