ROBERT EDWARD SAUNDERS v. RUFUS GEORGE WARREN AND RADIO
VAULT COMPANY, INC., A CORPORATION.

(Filed 7 April, 1965.)

**1. Automobiles § 13—**

Operation of an automobile in a manner which would be harmless on a
clear, dry highway may well be the proximate cause of injuries on an icy
highway, and the question of whether such operation is negligent must be
judged in view of the circumstances confronting the driver.

**2. Automobiles § 41f—   Issue of negligence in skidding on snow into
vehicle stopped on highway held for jury under the evidence.**

Evidence tending to show that as defendant rounded a curve he could
see some 285 feet ahead where plaintiff's truck was standing with its left
wheels on the hardsurface, with stalled vehicles ahead of him on the high-
way, that it was snowing, with ice and snow in spots on the highway, and
that when defendant applied his brakes his vehicle skidded into the rear of
plaintiff's truck, causing the injuries in suit, *held* sufficient to be submitted
to the jury on the issue of negligence in permitting the inference that de-
fendant either failed to exercise due care to keep a proper lookout or failed
to exercise due care to bring his vehicle under control and stop it before he
came in too close proximity to plaintiff's truck.

**3. Automobiles § 9—**

A temporary or momentary stopping on the highway because of the
exigencies of traffic is not parking on the highway within the meaning of
G.S. 20-161(a).

**4. Automobiles § 42c—**

Evidence that plaintiff, driving in light snow on a highway having ice
and snow in spots thereon, stopped on his right side with his left wheels on
the hardsurface because stalled vehicles blocked his lane of travel, and left
his truck so standing for a period of some five minutes while he rendered
aid to the operators of the stalled vehicles, there being lights on the truck
burning throughout the period, and was hit as he returned to his vehicle
and was ready to move forward, *held* not to show that such stopping was a
proximate cause of injuries sustained when defendant's vehicle skidded into
the rear of plaintiff's vehicle. G.S. 20-161(a).

**5. Trial § 22—**

Discrepancies and inconsistencies, even in plaintiff's testimony, do not
warrant nonsuit.

APPEAL by plaintiff from *Armstrong, J.,* October 26, 1964 Session of FORSYTH.

Plaintiff's action is to recover for personal injuries allegedly caused by defendant Warren's negligent operation of the corporate defendant's 1962 Studebaker truck. It was admitted that Warren was driving the truck as agent of the corporate defendant.

On February 26, 1963, about 5:00 p.m., plaintiff was operating a 1961 Ford truck in an easterly direction on N. C. Highway No. 66. The highway was icy and slick. It was snowing. Plaintiff observed stalled vehicles ahead and stopped. Warren, operating said Studebaker truck, was proceeding east on said highway. The front of the Studebaker truck collided with the rear of the Ford truck. The Ford truck was standing still when the collision occurred.

Issues of negligence, contributory negligence and damages were raised by the pleadings.

At the conclusion of plaintiff's evidence, the court, on motion of defendants, entered judgment of involuntary nonsuit.

*White, Crumpler, Powell, Pfefferkorn & Green for plaintiff appellant.*
*Hudson, Ferrell, Petree, Stockton, Stockton & Robinson and J. Robert Elster for defendant appellees.*

BOBBITT, J. Uncontroverted evidence tends to show: At the scene of collision, the highway is a tar and gravel road, "approximately 20 feet wide, with approximately 3 to 4 feet of shoulder on the right side headed east, and on the other side the shoulders are approximately the same width." To the right of the shoulder, "on the right side headed east," there is a ditch.

Plaintiff's testimony, when considered in the light most favorable to him, tends to show the facts narrated below.

Plaintiff was driving a 2½-ton flat-bed (Ford) dual-wheel truck. His speed was 35-40 miles per hour. Plaintiff testified: "It wasn't snowing hard . . . it was snow flurries . . . the roadway was wet . . . there was ice in spots and snow in spots." Upon rounding a (level or slightly downgrade) curve to his right, he saw approximately 300 feet ahead two stalled vehicles, a (pickup) truck and a car. The front of the truck was in the ditch to the right, the rear in plaintiff's lane of travel. The car, farther east, was on the highway. Westbound traffic was approaching and passing. Plaintiff stopped his truck. He got out to help those whose vehicles were stalled.

Acting on plaintiff's suggestions, the driver of the stalled car started forward. Then plaintiff, by means of a chain, pulled the stalled pickup truck completely off the highway. To do this, plaintiff "got just as

close over to the ditch as (he) could get without getting in the ditch, and . . . was about two foot from the ditch." After this, plaintiff was in his truck and ready to move forward. At that time, the right wheels of his truck were on the shoulder and the left wheels "were two foot on the pavement, or maybe a little more."

Plaintiff's clearance lights had been on and were burning before he reached the scene of collision. The clearance lights were across the top of the bed of his truck. When he stopped and got out, he turned on other lights, including "a 6-inch tail light that has got 'STOP' on it that blinks off and on." Plaintiff testified: "At the time the collision occurred it was cloudy, but it was daylight." Again: "Before the impact I wasn't there over five minutes."

The front of the Studebaker truck struck the left rear of the Ford truck. There was no visible damage to the steel bed of the Ford truck. The whole front of the Studebaker truck was mashed in.

A State Highway Patrolman, referring to his conversation with Warren at the scene of the collision, testified: "The defendant told me that he had come around that curve, going east. I don't recall him telling me that he saw the plaintiff's truck. He told me, when I asked him what happened, that he was traveling east, approximately 15 miles per hour, and he applied his brakes, and got to skidding on the ice, and he lost control of it. I don't recall him making any statement to me like he saw the plaintiff's truck down there." According to this witness, Warren stated that, after he applied his brakes and lost control, his truck "slid into the other truck." This witness also testified that *the measured distance* from the curve to the scene of collision was 285 feet.

There was evidence tending to show plaintiff, as a result of said collision, sustained personal injuries, principally in the area of his neck.

The rules applicable in the consideration of the evidence when passing on a motion for nonsuit are well settled. 4 Strong, N.C. Index, Trial § 21.

Defendants contend plaintiff's evidence shows only that defendants' truck skidded on an icy road when the driver was confronted with a sudden emergency and fails to show actionable negligence on the part of defendants. This contention is untenable.

In *Hardee v. York,* 262 N.C. 237, 136 S.E. 2d 582, where prior decisions relating to skidding are cited and discussed, the opinion of Moore, J., states: "An act or omission of a motorist which would not be negligent in the absence of the ice on the highway, might well be so if ice were present. And negligence which would be harmless on a clear, dry highway might well be the proximate cause of injury on an icy high-

way. An actor's act or omission is to be judged by the circumstances under which it occurs."

Here, there is ample evidence to support findings that Warren, by the exercise of due care, could and should have seen plaintiff's truck when he was approximately 285 feet therefrom; and that Warren, if he saw what he could and should have seen, had opportunity to bring his truck under control and stop it well before he reached plaintiff's truck. Hence, it may be reasonably inferred that Warren either failed to exercise due care to keep a proper lookout or, observing plaintiff's truck, failed to exercise due care to bring his truck under control and stop it before coming into close proximity to plaintiff's truck. A reasonable inference is that Warren did not attempt to stop until he came into close proximity to plaintiff's truck and that his failure to exercise due care in this respect was the cause of whatever emergency confronted him.

In *Culver v. LaRoach*, 260 N.C. 579, 133 S.E. 2d 167, and *Hall v. Little*, 262 N.C. 618, 138 S.E. 2d 282, cited by defendants, materially different factual situations were considered.

Defendants' contention that the evidence establishes as a matter of law that plaintiff was contributorily negligent is untenable.

Defendants assert, *inter alia*, that plaintiff's conduct was in violation of G.S. 20-161(a) and therefore constituted contributory negligence *per se*. The provisions of G.S. 20-161(a) are set forth and discussed in *Meece v. Dickson*, 252 N.C. 300, 113 S.E. 2d 578, where Winborne, C. J., based on cited cases, states: "To 'park' means something more than a mere temporary or momentary stoppage on the highway for a necessary purpose." (Note: In one respect, not material to decision on the present record, *Meece v. Dickson, supra*, was overruled in *Melton v. Crotts*, 257 N.C. 121, 125, 125 S.E. 2d 396.)

Plaintiff's truck was not disabled. He stopped because his lane of travel was blocked. Having stopped, he rendered aid to the operators of the stalled vehicles that blocked his lane of travel. The interval between the removal of the pickup from the highway and the collision was brief. Suffice to say, the evidence fails to establish as a matter of law that a violation of G.S. 20-161(a), if any, was a proximate cause of the collision. Nor does the evidence establish as a matter of law that plaintiff was contributorily negligent in any other respect. *Pender v. Trucking Co.*, 206 N.C. 266, 173 S.E. 336, and *Chandler v. Bottling Co.*, 257 N.C. 245, 125 S.E. 2d 584, cited by defendants, deal with materially different factual situations.

Conceding there are discrepancies and inconsistences in the evidence, even in the testimony of plaintiff, these are to be resolved by the jury. *Stathopoulos v. Shook*, 251 N.C. 33, 36, 110 S.E. 2d 452.

Our conclusion is that the evidence was sufficient to require determination by the jury under appropriate instructions of the issues raised by the pleadings. Hence, the judgment of involuntary nonsuit is reversed.

Reversed.