MRS. MARY VINIA FORBIS v. GEORGE GERALD WALSH AND WIFE, MARY LOUISE WALSH.

(Filed 23 November, 1966.)

**1. Appeal and Error § 51—**

Judgment of nonsuit in the lower court must be reversed on appeal if the evidence considered in the light most favorable to plaintiff is sufficient to permit the jury to find all facts necessary to constitute a cause of action in plaintiff's favor.

**2. Deeds § 17—**

Contemporaneously with plaintiff's execution of deed to defendants, defendants executed a contract to furnish plaintiff maintenance and support in accordance with her then standard and custom of living, and to reconvey upon request upon their failure to perform in any respect the acts specified in the contract. Plaintiff's evidence tended to show that she left the premises some ten months thereafter as a result of fear induced by threats and abuse of the *feme* defendant, that plaintiff had demanded a reconveyance, and that the request was refused. *Held:* The evidence raised an issue for the determination of the jury and judgment of nonsuit was error.

**3. Appeal and Error § 51—**

On appeal from judgment of nonsuit, the Supreme Court will discuss the evidence only to the extent necessary to determine its sufficiency to go to the jury and may refrain from discussing or deciding any other question.

APPEAL by plaintiff from *Latham, S.J.,* February 7, 1966, Schedule C Session, MECKLENBURG Superior Court.

The plaintiff instituted this civil action to compel defendants specifically to perform their written contract to reconvey to her two certain specifically described tracts of land located in Mecklenburg County. The plaintiff alleged that on February 15, 1965, she was induced by the defendants to convey to them by warranty deed the described lands. As consideration for the conveyance the defendants executed the following agreement:

"STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG                 AGREEMENT
THIS IS TO CERTIFY that on this date Mrs. Mary Vinia Forbis, Route #4, Matthews, North Carolina, has conveyed certain real estate to George Gerald Walsh and wife, Mary Louise Walsh. It is further agreed between the parties that in consideration for the transfer of the property which has been transferred from Mrs. Forbis to Mr. and Mrs. Walsh that Mr. and Mrs. Walsh hereby agree that they shall furnish Mrs. Forbis with all required needs for her maintenance and support, including a suitable residence where she may live. This Agreement to fur-

nish the maintenance and support for Mrs. Forbis includes any and all things which might be needed for her well-being and, of course, includes the right of Mrs. Forbis to be supported and maintained in accordance with her present standard and custom of living.

"If for any reason George Gerald Walsh and wife, Mary Louise Walsh, fail in any respect to perform the acts and deeds specified herein, then upon request said property shall be reconveyed to Mrs. Mary Vinia Forbis.

"This the 15th day of February, 1965.

s/ George Walsh (SEAL)

s/ Mary Louise Walsh (SEAL)"

The plaintiff alleged the defendants executed the contract and breached it by refusing to carry out its terms in that they failed to maintain or support her or to provide for her a suitable residence as they had agreed. She alleged demand for a reconveyance of the land and the defendants' refusal.

By answer, the defendants denied they had breached the agreement or that the plaintiff is entitled to a reconveyance. They admit the plaintiff has made demand for reconveyance which they have refused.

The evidence disclosed that the plaintiff is 72 years of age. She is the widow of Oscar Forbis who died October 6, 1964. The defendant, Mary Louise Walsh, is the only child of the plaintiff. After the death of Oscar Forbis in October, 1964, the plaintiff lived in the defendants' home in Charlotte until December 1, 1964, when all the parties moved to the plaintiff's home on the described lands. According to the testimony of the plaintiff, and in its light most favorable to her, the defendants began arguments and pleas that the plaintiff convey the lands to them. At first she declined. Finally she agreed, and executed the deed in consideration of the agreement which was attached to the complaint.

The plaintiff, as summarized in part and quoted in part, testified:

"After the deed was signed on February 15th my daughter and son-in-law continued to live with me on the land until October, 1965, when I left. During that period of time from February 15th until October 23, 1965, when I left, I was left alone quite a lot of times, perhaps five or six days a week. I can't even tell you how much; it was quite a lot of times. When they went off I was left alone for a week at a time, four or five days. They went to Memphis a couple of times and they stayed there about a week. They went to Atlanta and stayed there about a week. They went to New York on July 6, 1965, and they stayed

there about a week. During those times I was at the home by myself. I had no transportation and they did not request anyone to check on me, to my knowledge, although I had my neighbor to check on me from time to time to see if I was all right."

After the parties returned from a trip to the beach, the plaintiff testified: "I knew there was trouble and that there was something wrong. I recall that my son-in-law turned on the television and my daughter went in the bedroom, and after a little bit began complaining. She said, 'I am tired of this thing. Mother is just with us everywhere we go. We don't get any time to ourselves at all. She's always in the car. She's everywhere we go,' and she said, 'I have got a headache,' and Jerry got up and went over and turned off the television. They went in their room and I went to my bedroom."

On July 25, the plaintiff requested her daughter to drive her to the homecoming reunion at her church. "She said that I didn't let her know soon enough. I said that if it was inconvenient for her to take me to church, that it was all right, that she didn't have to. I guess my daughter was very, very mad, although I didn't know she was so terribly mad. She finally did agree to take me.

"We got in the car and left the home to go to church, which is in the Mint Hill section. We went past the road which leads to church. I would say we passed it about three or four miles and we went into Union County near Hemby's Bridge. She said that she didn't have time to take me to church and cursed me on the way; I don't remember the bad words she used because I was scared nearly stiff. She cursed me and told me, 'I've got a good notion to kill you. I think I will take you out and bash your head in, that's what I think I will do.' "

After the church service the plaintiff went to the home of her brother and sister-in-law. On the following Monday afternoon they took her back home. "When I returned home . . . my daughter scarcely said anything to me. Finally she said, 'Why don't you get out and go live with people your own age? You ought to be with people like yourself.' " . . . "On one occasion I started to the mail box to get the paper. When I left the house my daughter said, 'Don't come back. If you do I will kill you.' . . . I started to the mail box. My daughter ran after me and I was frightened and I screamed. She slapped her hand over my mouth. . . . My neighbor, Roy Hooks, saw this."

Roy Hooks testified: "I heard some type of commotion on that occasion. I was 150 or 200 feet from their house at the time. Mrs. Forbis seemed to be attempting to scream, a kind of muffled scream, as though she might be in distress. Her daughter, the defendant, Mrs.

Walsh, was speaking rather loud and seemed to be trying to get her back in the house."

The plaintiff offered evidence she is now living in Concord and the defendants are contributing nothing to her support.

At the conclusion of the plaintiff's evidence, the court entered judgment of involuntary nonsuit. The plaintiff excepted and appealed.

*Wardlow, Knox, Caudle & Wade by J. J. Wade, Jr., H. Edward Knox for plaintiff appellant.*

*Millsaps, Robertson & Brumley by Richard H. Robertson, A. Neal Brumley for defendant appellees.*

HIGGINS, J.    The only assignment of error challenges the court's judgment of involuntary nonsuit entered at the close of the plaintiff's evidence. If the evidence, in its light most favorable to her, is sufficient to permit the jury to find all pertinent facts involved in the cause of action she has alleged, the judgment of nonsuit is erroneous and should be set aside to the end that a jury may pass on the evidence and answer the issues raised by the pleadings. *Keith v. Gas Co.*, 266 N.C. 119, 146 S.E. 2d 7; *Saunders v. Warren*, 264 N.C. 200, 141 S.E. 2d 308.

The plaintiff brought this action for breach of the written contract quoted in the statement of facts. The contract was in writing, under seal, duly acknowledged and registered. It recites the plaintiff, by warranty deed, conveyed two tracts of land to the defendants — her daughter and son-in-law. The consideration for the conveyance was the promise of the defendants to furnish maintenance and support "[which] includes any and all things which might be needed for her well-being." The parties agreed upon the plaintiff's relief in case of a breach of this contract, "If for any reason [the defendants] fail in any respect to perform the acts and deeds herein, then upon request said property shall be reconveyed to Mrs. Mary Vinia Forbis."

The plaintiff offered evidence sufficient to raise the issue of fact whether the defendants had breached the contract. The issue was for jury determination. The court could not answer it as a matter of law. In such cases the Court discusses evidence only to the extent necessary to disclose the basis for decision. We refrain from discussing or deciding any question except that the evidence is sufficient to go to the jury. Pertinent decisions on other matters are discussed in the briefs, including *Mills v. Dunk*, 263 N.C. 742, 140 S.E. 2d 358; *Higgins v. Higgins*, 223 N.C. 453, 27 S.E. 2d 128;

*Stamper v. Stamper,* 121 N.C. 251, 28 S.E. 20; *Wall v. Williams,* 93 N.C. 327.

For the reasons assigned, the judgment of nonsuit is Reversed.