There is much apparent force in the objection urged by the defendant's counsel in this case. The words of the statute under which these proceedings take place are: "Any two justices of the peace, upon their own knowledge, or information made to them, that any single woman within their county is big with child, or delivered of a child," etc. Rev. St., ch. 12, sec. 1. It is insisted that, to give the justices of the peace of any county authority to proceed under the act, the warrant must be issued either while the woman is pregnant or, if after the birth, in the county where that takes place. We do not accede to this construction. The words, "within their county," are not necessarily connected by the conjunction, or, with the words, "delivered of a child." This will be more clear if the ellipsis after the conjunction is supplied, as it ought to be. It would then read, "or has been delivered of a child." And if a literal adherence to the phraseology of the act be insisted on, we do not think it would assist the defendant. The woman had been or was delivered of a child, which was likely to become burthensome to some county. This is not a penal act, but one of police regulation, and ought to receive such a construction as will carry out the intention of the Legislature and facilitate its execution. An unfortunate being of this *Page 254 
description, being in the eye of the law filius nullius, becomes in the eyes of humanity filius populi, and the public is bound to take care of him at a period of his life when he cannot, in the nature of things, provide for himself. To take this (352) burthen from those who have not participated in the offense, and place it on him upon whom it ought to rest, is the object of the act. In carrying it into execution the first inquiry is, where does the jurisdiction rest? Certainly where the law, in the first instance, casts the burthen, that is, where the mother lives. Cases of this kind are not strictly cases of settlement, yet they are strongly assimilated to them. All children, except bastards, have their primary settlement in their father's parish; the latter, in general, where born. In cases of fraud, however, where an attempt is made, illegally, to shift the burthen of maintenance, the bastard will be settled in the parish of the mother, whence she was improperly removed. As when, after pregnancy, the woman is sent in by the order of justices, or comes as a vagrant, to a parish to which she does not belong, and drops her child there. 1 Bl. Com., 459. In Wood's case, 1 Sal., 121, the above doctrine was affirmed. A woman big with child was removed by order of two justices from A to B, and was there brought to bed. B appealed, and the woman was sent back to A, and, by the court, "so ought the child, for all was suspended by the appeal, and now the mother's right of settling on B is avoided ab initio." So in Costham's case, 122d page of the same reporter. The woman was removed by an order of two justices from Westbury in Wilkshire to Costham, and there was brought to bed. At the next sessions Costham appealed, and the order was reversed. Afterwards, by order of two justices of Westbury, the child was sent to Costham; they appealed, and the order was confirmed. At last, in the language of the reporter, "all was removed into the King's Bench.Et per curiam. The birth at Costham did not settle the child there, because Westbury unjustly procured the mother to go there." From aught that appears in the case, the woman, Zilpha Robbins, went into the county of New Hanover for the (353) sole purpose of being delivered. She was a native of Brunswick County and had lived there all her life. How long she remained in New Hanover the case does not disclose, but she returned to her native county, and in all probability is still there. If she went to New Hanover with the purpose of throwing the burthen of the maintenance of her child upon that county, or was induced to do so with the view to screen the father of her child, or to render it more difficult to fix the paternity upon him, in either case the act was illegal, and the child *Page 255 
after its birth would follow the settlement of the mother. So, if she went to New Hanover for any other purpose, as on a visit. If this were not so, constant attempts to evade the law would be made by those whose interest or reputation was endangered by an exposure. Any justice of the peace for New Hanover, upon complaint made to him on oath by any warden of the poor, would have been justified in sending Zilpha Robbins back to Brunswick. Rev. St., ch. 89, sec. 17. The object of the Bastardy Act was to shift the burthen of maintaining the child from the innocent many to the guilty one. If the county fails to fix paternity upon some one in particular, or, having fixed him, he is unable to give the requisite security, and the mother be unable, the county must provide for the maintenance of the bastard until he reaches an age when he may be bound out.