STATE v. JOHN ROBINSON.

(Filed 21 November, 1956.)

1. **Bastards § 1—**

   Under G.S. 49-2 each parent is made criminally liable for wilful failure or refusal to support his or her illegitimate child, and, the wilful failure to support being the offense, the crime cannot be committed before the child is born.

2. **Same—**

   In proceedings under G.S. 49-2, *et seq.*, the paternity of an illegitimate child must be established beyond a reasonable doubt before conviction of a male defendant and the question of paternity may be determined even before the birth of the child in any court having criminal jurisdiction in excess of that of a justice of the peace. G.S. 49-5, G.S. 49-7.

3. **Same—**

   Proceedings under G.S. 49-2, *et seq.*, can be instituted only by the mother of an illegitimate child, her personal representative or the superintendent of public welfare. G.S. 49-5.

4. **Same: Courts § 18—**

   A Domestic Relations Court has jurisdiction to determine the question of paternity in a proceeding under G.S. 49-2, *et seq.* G.S. 7-103.

5. **Bastards § 7—**

   In proceedings in a Domestic Relations Court upon an affidavit charging defendant with being the father of the unborn child of prosecutrix and failing to provide her with medical care and a warrant of arrest to answer the charge, the court found that defendant was the father of the child. *Held:* The fact that the offense of wilfully neglecting his illegitimate child had not been committed at the time the affidavit was filed, and the fact that the court exceeded its power in ordering defendant to make payments for the support of the child, do not vitiate the court's determination of the question of paternity.

6. **Bastards § 3—**

   Where the question of paternity is judicially determined within three years after the birth of the illegitimate child, the defendant may thereafter be prosecuted for his wilful neglect and refusal to support the child. G.S. 49-4.

7. **Criminal Law § 60b—**

   The fact that the sentence imposed is not justified by the verdict does not vacate the verdict.

8. **Bastards § 6½—**

   In a prosecution for wilful failure of defendant to support his illegitimate child, a charge to the jury which does not instruct them that the failure to support must be wilful in order to constitute the offense, must be held for prejudicial error.

JOHNSON, J., not sitting.
HIGGINS, J., dissents.

APPEAL from *Bone, J.,* July A Criminal Term 1956, WAKE.

On 4 April, 1956, Myrtle Christmas made an affidavit charging that the defendant "did beget upon the body of Myrtle Christmas a child, Margaret Elaine, born 12-17-50 and did unlawfully and wilfully neglect and refuse to support said illegitimate child since July 27, 1953 . . ." Based on this affidavit a warrant issued and a hearing was had in the Domestic Relations Court on 25 May, 1956. The court found the defendant guilty and rendered judgment requiring him to pay $7 per week for the support of the child. The judgment contains this recital: "This Court found on 7 August, 1951, that this defendant was the father of Margaret Elaine, born 12-17-50." Defendant appealed from the judgment of the Domestic Relations Court to the Superior Court. The case was heard in the Superior Court on the warrant issued 4 April, 1956. The jury found defendant guilty. Judgment was thereupon entered sentencing defendant to six months in prison, suspended upon condition that defendant make stated payments for the support of the infant. Defendant appealed.

*Attorney-General Patton and Assistant Attorney-General Love for the State.*

*Taylor & Mitchell for defendant appellant.*

RODMAN, J. Prosecuting witness testified that her child was born 17 December, 1950, and prosecutrix and defendant were never married. She further testified: "I had the defendant up; I signed a warrant for him myself, and we had the trial in August after the baby was born; he was supposed to pay me $7.00 a week until the baby became 18 years old; he paid that $7.00 for about two years and then he quit paying; I had him up again for nonsupport of the child; that was about two years ago. Judge Fountain told him he would have to pay $12.00 a week to catch up and he paid for a week or two or two weeks or three weeks and then he was out of town. I didn't have him up any more until back in this April." There was further evidence from prosecutrix of the gift of a $32 tricycle to the infant and payment of some small medical fees for the child. On cross-examination she said that the weekly payments of $7 came to her from the Domestic Relations Court and were made as commanded by the judgment rendered by that court on 7 August, 1951.

The defendant offered in evidence the records of the Domestic Relations Court consisting of: affidavit of Myrtle Christmas dated 13 December, 1950, stating "on or about the 12 day of April 1950, John

Robinson with force and arms, at and in the County aforesaid, did wilfully, maliciously, unlawfully beget upon the body Myrtle Christmas a child yet unborn and did fail to provide medical care for the said Myrtle Christmas against the Statute in such cases made and provided, against the peace and dignity of the State."

On the same day the court issued its order directed to the sheriff "to forthwith apprehend the said John Robinson and him have before J. L. Fountain, the Judge, in the Domestic Relations Court . . . on the 29 day of December, at 10:00, 1950, then and there to answer the above complaint and be dealt with according to law."

Defendant, on 20 December, 1950, executed bond with surety for his appearance at the term fixed.

On 7 August, 1951, the Domestic Relations Court entered a judgment which reads: "Upon the trial of this case the defendant is found guilty and is ordered and adjudged that the Court finds that this defendant is the father of this child born 12-17-50. Prayer for judgment continued for 2 years on condition that defendant pay into each week for the support of his illegitimate child $7.00. . . . This case retained for further orders of this Court."

In 1953 the defendant ceased to make the weekly payments called for in the August 1951 judgment. Upon motion of prosecutrix he was cited to appear before the Domestic Relations Court. On 23 July, 1953, this entry was made: "Prosecuting witness admits that this defendant gave her $8.00. Pay $12.00 each week until back payments in the amount of $87.00 is paid. First payment payable July 27, 1953. Pay capias cost today. No change in judgment."

Pursuant to this order defendant made one payment of $12. No other or further payments were made prior to the filing of the affidavit of April 1956 on which this prosecution is based.

Defendant offered no parol evidence. The court charged the jury: "Members of the Jury, this defendant, John Robinson, is being tried upon a charge of unlawfully neglecting and refusing to support and maintain his illegitimate child begotten upon the body of Myrtle Christmas, the name of the child being Margaret Elaine Christmas, born 12-17-50.

"Now, the court charges the jury that if you believe the evidence and find beyond a reasonable doubt the facts to be as all the evidence tends to show then you would return a verdict of guilty as charged; if you do not believe the evidence or do not find beyond a reasonable doubt the facts to be as all the evidence tends to show, then you would return a verdict of not guilty."

Defendant excepted and assigns the charge as error. He insists that the paternity of the child has not been established, that more than three years have elapsed since the birth of the child, and prosecution is now

barred. He further insists that a peremptory instruction cannot be given when it is necessary to find that an act was wilful.

The law imposes a duty on a parent to provide support for his child. This duty may, as to legitimate children, be enforced by civil action, *Green v. Green,* 210 N.C. 147, 185 S.E. 651; *Burke v. Turner,* 85 N.C. 500; *Walker v. Crowder,* 37 N.C. 478; and when a parent wilfully abandons and fails to support his legitimate offspring, he is guilty of a misdemeanor. G.S. 14-322.

The common law recognized no legal duty on the part of the father to provide for the support of an illegitimate child. He was said to be a *filius nullius,* the child of nobody. He had no rights against an asserted parent that could be enforced in court. *Allen v. Hunnicutt,* 230 N.C. 49, 52 S.E. 2d 18.

The provincial General Assembly of North Carolina, in 1741, by ch. XIV, undertook to deal with the paternity of bastards and the obligation of the father to provide support. The Act provided: "any two Justices of the Peace, upon their own knowledge, or Information made to them, that any single Woman within this County is big with Child, or delivered of a Child or Children, may cause such Woman to be brought before them, and examine her, upon Oath, concerning the Father; and if she shall refuse to declare the Father, she shall pay the Fines in this Act before mentioned, and give sufficient Security to keep such Child or Children from being chargeable to the Parish, or shall be committed to Prison, until she shall declare the same, or pay the Fine aforesaid, and give Security as aforesaid. But in Case such Woman shall, upon Oath, before said Justices, accuse any Man of being the Father of a Bastard Child or Children, begotten of her Body, such Person so accused shall be adjudged the reputed Father of such Child or Children, and stand Charged with the Maintenance of the same, as the County Court shall Order, and give Security to the Justices of said Court to perform said Order, and to indemnify the Parish where such Child or Children shall be born, free from Charges for his, or her, or their Maintenance, and may be committed to Prison until he find Securities for the same, if such Security is not by the Woman before given." Section XI of the Act provides that if the charge is made before the child is born that the cause might be continued until the birth of the child. XXIII State Records, p. 174.

The act of 1741, entitled "An Act for the better Observation and keeping of the Lord's Day, commonly called Sunday; and for the more effectual Supression of Vice and Immorality," made the oath of the woman conclusive evidence of the paternity of the child. Paternity having been established, the father could be imprisoned until he provided security to protect the community from the burden of supporting the child. In 1799 the statute was amended to provide that execution

STATE v. ROBINSON.

might issue and the obligation to support might also be enforced by the sale of the property of the father.

The conclusive force given to the oath of the mother remained the law until 1814. Ch. VII of the laws of that year amended the Act of 1741. The preamble of the 1814 Act recites: "WHEREAS by the before recited act whenever a single woman shall upon oath before two Magistrates according to its provisions, accuse any man of being the father of her bastard child or children, such person so accused shall be adjudged the reputed father of such child or children and stand charged with the maintenance thereof: And whereas the said act by rendering the oath of the woman alone conclusive evidence of the fact, so far from operating as a suppression of vice and immorality, has a contrary effect:" It then provides that the man charged with the paternity of the child may traverse the allegation and have a trial of the issue of fact thus raised. Upon such trial the oath of the woman was made *prima facie* but not conclusive evidence. The Act further provided: "all examinations upon oath to accuse or charge any man of being the father of a bastard child shall be had and taken within three years next after the birth of said child, and not after." Provision was made for appeal on the question of paternity by this language: "the officer prosecuting in behalf of the county, shall, and he is hereby authorized to appeal to the Superior Court of Law in all cases where he shall think that justice has not been obtained in the trial of any issue."

The Act of 1741 as modified in 1799 and 1814, with slight modifications and changes in phraseology, was the law of North Carolina as it relates to bastards until 1933. Ch. 12, Rev. Stat.; ch. 12, Rev. Code; ch. 5, Code 1883; ch. 8, Revisal of 1905; ch. 6 of Con. Stat. of 1919.

Proceedings to compel a parent to provide support for his child were, under the Act of 1741, regarded, except for a short period, as being civil in nature, intended only to protect the community from the burden of supporting a child. *S. v. Roberts,* 32 N.C. 350; *S. v. Edwards,* 110 N.C. 511; *S. v. Liles,* 134 N.C. 735; *S. v. Mansfield,* 207 N.C. 233, 176 S.E. 761. This is the usual approach to the problem of providing support for illegitimate children. 7 Am. Jur. p. 680. The Legislature of 1933 changed the approach to the problem. Now the proceeding is criminal. It is now the wilful neglect or refusal of a parent to support his or her illegitimate child. Such failure is by the express language of the statute made a misdemeanor. P.L. 1933, ch. 228, G.S. 49-2; *S. v. Mansfield, supra; S. v. Cook,* 207 N.C. 261. No longer is the primary burden placed upon the father. Each parent is made responsible for his wilful failure to perform his duty. The crime cannot be committed before the child is born. *S. v. Thompson,* 233 N.C. 345, 64 S.E. 2d 157; *S. v. Ferguson,* 243 N.C. 766, 92 S.E. 2d 197. The begetting of the child is

not a crime. *S. v. Tyson,* 208 N.C. 231, 180 S.E. 85; *S. v. Dill,* 224 N.C. 57, 29 S.E. 2d 145; *S. v. Stiles,* 228 N.C. 137, 44 S.E. 2d 728.

To impose responsibility on one for the support of an illegitimate child, it must first be established that he is the father of the child. As noted, the Act of 1741 created a conclusive presumption from the oath of the mother. This was modified in 1814 to make a *prima facie* case by the affidavit or oath of the woman. There is now no presumption from the affidavit or testimony of the mother.

By express statutory language preliminary proceedings to determine the paternity of the child may be initiated and determined before the birth of the child. A continuance of the proceeding until after the birth of the child rests in the sound discretion of the trial court, G.S. 49-5; and when such continuance is granted, "the courts shall recognize the person accused of being the father of the child with surety for his appearance, either at the next term of the court or a time to be fixed by the judge or court granting a continuance, which shall be after the delivery of the child."

Proceedings under the statute may be instituted in the Superior Court or any court inferior to the Superior Court "except courts of justices of the peace and courts whose criminal jurisdiction does not exceed that of justices of the peace." G.S. 49-7. Thus it appears that the preliminary proceeding to determine paternity is to be tried in a court having criminal jurisdiction in excess of a justice of the peace. The court is expressly commanded to first determine the paternity of the child. G.S. 49-7. That fact cannot be established by mere preponderance of the evidence but must be established beyond a reasonable doubt. *S. v. Ellison,* 230 N.C. 59, 52 S.E. 2d 9; *S. v. Robinson,* 236 N.C. 408, 72 S.E. 2d 857; *S. v. Humphrey,* 236 N.C. 608, 73 S.E. 2d 479; *S. v. Chambers,* 238 N.C. 373, 78 S.E. 2d 209.

Proceedings under the Act can only be instituted by the mother or her personal representative or the superintendent of public welfare. G.S. 49-5. That provision is, of course, applicable both to preliminary proceedings authorized by the statute to determine paternity and to proceedings involving the completed crime.

Was there a judicial determination of the paternity of the child by the Domestic Relations Court in August 1951? Undoubtedly the Domestic Relations Court had jurisdiction to determine that question. G.S. 7-103. The mother filed an affidavit specifically charging the defendant with being the father of her unborn child. The fact that the affidavit also stated that the defendant had failed to provide medical care for affiant neither weakens nor strengthens the charge defendant was required to answer. Process duly issued from the court commanding defendant "to answer the above complaint and be dealt with according to law." Thereupon the defendant gave bond for his appear-

ance. He was properly before the court on a charge of which the court had authority to make due inquiry and find the facts. On the hearing the court found and adjudged "this defendant is the father of this child born 12-17-50." When the affidavit was filed and the warrant of arrest issued, defendant had not committed the statutory offense of wilfully neglecting his illegitimate child. *S. v. Thompson, supra; S. v. Ferguson, supra.* That crime had been committed when the cause was tried. The court was, however, without power to try the defendant for the crime, but lack of authority to pass on the guilt of the defendant because of the date of the complaint did not impair the authority of the court to proceed to determine the issue of paternity.

Because the court exceeded its power and ordered the defendant to make payments for the support of the child does not vitiate and destroy that which the court had the power and authority to do, *i.e.*, to find the facts as to paternity. Such finding was in effect a jury verdict. A sentence imposed not justified by a verdict does not vacate the verdict. *S. v. Graham,* 224 N.C. 347, 30 S.E. 2d 151; *S. v. Malpass,* 226 N.C. 403, 38 S.E. 2d 156; *S. v. Austin,* 241 N.C. 548, 85 S.E. 2d 924; *S. v. Marsh,* 234 N.C. 101, 66 S.E. 2d 684. Defendant had the right to appeal the finding that he was the father of the child. G.S. 49-7. He elected not to do so, preferring to make the payments directed by the court. The paternity of the child has been judicially declared within three years of its birth, and hence defendant may be prosecuted and convicted if he has wilfully neglected and refused to support his child. G.S. 49-4.

The court charged the jury that the defendant was on trial for unlawfully neglecting and refusing to support and maintain his illegitimate child. He made no attempt to define the unlawful failure to support. He nowhere told the jury that the failure to support must be wilful. This oversight of the judge can be understood because the battle in the lower court turned on the effect to be given to the judgment of the Domestic Relations Court rendered in August 1951. Nevertheless the oversight must be held for prejudicial error. Defendant cannot be convicted unless he wilfully neglects to support his child. *S. v. Cook, supra; S. v. Mansfield, supra; S. v. Stiles, supra; S. v. Vanderlip,* 225 N.C. 610, 35 S.E. 2d 885; *S. v. Morgan,* 226 N.C. 414, 38 S.E. 2d 166; *S. v. Hayden,* 224 N.C. 779, 32 S.E. 2d 333; *S. v. Coppedge,* 244 N.C. 590; *S. v. Gibson, post,* 71.

New trial.

JOHNSON, J., not sitting.

HIGGINS, J., dissents.