STATE OF NORTH CAROLINA v. JAMES EDWARD GREEN

No. 22

(Filed 14 October 1970)

1. **Criminal Law § 180— writ of coram nobis**

Although the writ of *coram nobis* has been supplanted by statute with reference to any person imprisoned, the writ remains as at common law and is available under our procedure to challenge the validity of a conviction by reason of matters extraneous to the record. G.S. 15-217 *et seq.;* G.S. 4-1; N. C. Constitution, Art. IV, § 10.

2. **Criminal Law § 180— coram nobis — application to Supreme Court**

Since authority for issuance of the writ of *coram nobis* derives from the supervisory power of the Supreme Court as conferred by the Constitution, it is necessary that an application be made to the Supreme Court for permission to apply for the writ to the court in which the case was tried.

3. **Criminal Law § 180— coram nobis — prima facie showing of substantiality**

Application for writ of *coram nobis* will be granted by the Supreme Court only upon a *prima facie* showing of substantiality.

4. **Criminal Law § 180— coram nobis is no substitute for appeal**

*Coram nobis* is not a substitute for an appeal.

5. **Criminal Law § 180— coram nobis — address to trial court**

The writ of *coram nobis* must be addressed to the court in which the defendant was tried.

State v. Green

6. **Constitutional Law § 32; Bastards § 1— willful failure to support illegitimate child — right to counsel**

   The offense of willful failure to support an illegitimate child is not a serious misdemeanor requiring the appointment of counsel or an intelligent waiver thereof. U. S. Constitution, Amendments VI and XIV; G.S. 49-2; G.S. 49-8.

7. **Bastards § 1; Constitutional Law § 32; Criminal Law § 142— willful failure to support illegitimate children — right to counsel — effect of support payments and subsequent prosecutions**

   In a prosecution for willful failure to support an illegitimate child, the support payments that a convicted defendant may be required to make to his illegitimate children are not a part of the punishment and are therefore irrelevant to the question of defendant's right to counsel; the fact that defendant may be prosecuted more than once for the offense and sentenced to successive terms of six months' imprisonment is also irrelevant to the question of right to counsel.

8. **Bastards § 9— willful failure to support bastard — punishment**

   The authorized punishment for the willful failure or neglect to support an illegitimate child is limited at most to six months in prison. G.S. 49-8.

9. **Criminal Law § 4; Constitutional Law § 32— determination of serious offense — punishment**

   Whether an offense is petty or serious is measured, in both state and federal courts, by the punishment authorized by law for the particular offense in question. G.S. 7A-451.

10. **Constitutional Law §§ 29, 32— right to counsel — right to jury — petty misdemeanor**

    Any crime whose maximum authorized punishment does not exceed six months in prison is a petty offense for which the offender may be tried without a jury and without the assistance of counsel.

    Justice SHARP dissenting.

    Chief Justice BOBBITT and Justice HIGGINS join in dissenting opinion.

APPEAL by defendant from decision of the Court of Appeals upholding judgment of *Godwin, S.J.*, at the November 1969 Session of ROCKINGHAM.

On 7 November 1966 defendant was tried in the Reidsville Recorder's Court upon a warrant charging him with willful neglect and refusal to support two named illegitimate children begotten by him upon the body of Zeena Lane. Defendant entered a plea of not guilty but was convicted. The court pronounced judgment that defendant be confined in the common jail of Rockingham County for a term of six months, suspended for two years on condition defendant be of good behavior, pay the costs, and pay into court the sum of $10.00 per week, commencing 12

November 1966, for the support of his two minor illegitimate children. The cause was retained for further orders. Defendant did not appeal.

Thereafter, upon a finding that defendant had failed to comply with the judgment in that he had failed to make the support payments as ordered, the judge of the Reidsville Recorder's Court ordered the suspended sentence into effect. Defendant appealed from that order to the Superior Court of Rockingham County.

On 3 April 1969, while his appeal from the order invoking the suspended sentence was still pending, defendant applied to the Superior Court of Rockingham County for issuance of a writ of error *coram nobis*, alleging: (1) that on 7 November 1966 he was tried, convicted and sentenced in the Reidsville Recorder's Court for the offense of willful nonsupport of two illegitimate children; that active sentence was suspended and defendant is not now confined to any penal institution specified in G.S. 15-217 so as to come within the purview of the Post-Conviction Hearing Act, but he is prejudiced nevertheless by the sentence imposed in the Reidsville Recorder's Court and his rights under the Constitution of the United States were violated in his original trial; (2) that the terms of the suspension of sentence prejudiced defendant in that they require the payment of money on a continuing basis for support of two children; (3) that at the original trial in Reidsville Recorder's Court defendant was without counsel, was indigent and unable to afford counsel, and the trial judge made no inquiry into his indigency and did not offer to afford him counsel; that he did not intelligently waive his right to counsel; that his trial without the benefit of counsel is a violation of the rights secured to him by the Sixth and Fourteenth Amendments to the United States Constitution; (4) that "the above is an error of fact not appearing in the record of said recorder's court"; (5) that this cause is pending in the superior court by reason of an appeal by defendant from an order of the recorder's court invoking the suspended sentence for alleged noncompliance with the terms thereof; and (6) that defendant has a defense to the crime charged; that, particularly as to the oldest child named in the warrant, said warrant shows on its face that the statute of limitations, G.S. 49-4, has barred the action. Based on the foregoing allegations defendant prayed that the writ of error *coram nobis* issue "to the end that defendant be afforded a new trial, free from constitutional error."

The presiding judge found facts substantially in accord with the foregoing recitals and concluded as a matter of law that since the maximum punishment provided by law under G.S. 49-8 for willful failure to support illegitimate children was a jail sentence of six months—a petty misdemeanor—defendant was not entitled to counsel as a matter of right. The application for writ of error *coram nobis* was thereupon denied. Defendant excepted and appealed to the Court of Appeals which affirmed, 8 N.C. App. 234, 174 S.E. 2d 8 (1970). Defendant thereupon appealed to this Court under G.S. 7A-30 alleging involvement of a substantial constitutional question which was passed upon erroneously by the court below.

*Alston, Pell, Pell & Weston, attorneys for defendant appellant.*

*Attorney General Robert Morgan, Deputy Attorney General Jean A. Benoy, Assistant Attorney General Henry T. Rosser and Assistant Attorney General R. S. Weathers for the State.*

HUSKINS, Justice

[1] The writ of error *coram nobis* is an established common law writ available under our procedure to challenge the validity of a conviction by reason of matters extraneous to the record. *In Re Taylor*, 230 N.C. 566, 53 S.E. 2d 857 (1949). It has been supplanted by G.S. 15-217, *et seq.*, with reference to "any person imprisoned." Otherwise the writ remains as at common law and is available under our procedure. Its availability in this State stems from G.S. 4-1 which adopts the common law as the law of this State (with exceptions not pertinent here), and authority for the writ stems from Article IV, Section 8 (now Section 10) of the Constitution of North Carolina which gives the Supreme Court authority to exercise supervision over the inferior courts of the State. *State v. Daniels*, 231 N.C. 17, 56 S.E. 2d 2 (1949).

[2, 3] Since authority for issuance of the writ derives from the supervisory power of the Supreme Court conferred by the Constitution, "it is necessary that an application be made to this Court for permission to apply for the writ to the Superior Court in which the case was tried. *In Re Taylor (supra)*, 230 N.C. 566, 569. It is granted here only upon a '*prima facie* showing of substantiality,' and it is observed in the *Taylor* case last cited, 'the ultimate merits of petitioner's claim are not for us

but for the trial court,' " *State v. Daniels, supra* (231 N.C. 17 at 25) ; *State v. Daniels,* 231 N.C. 341, 56 S.E. 2d 646 (1949).

[4]  *Coram nobis* is not a substitute for an appeal. "Under our practice permission to petition the Superior Court in which the petitioning defendant was tried is given only when the matter on which the petition is based is 'extraneous to the record.' " *State v. Daniels,* 232 N.C. 196, 59 S.E. 2d 430 (1950).

[5]  Defendant has neither sought nor obtained permission of this Court to apply for the writ. Moreover, his unauthorized application was addressed to the wrong court. "The writ of error *coram nobis* 'is brought for an alleged error of fact, not appearing upon the record, and *lies to the same court,* in order that it may correct the error, which it is presumed would not have been committed had the fact in the first instance been brought to its notice.' " *State v. Merritt,* 264 N.C. 716, 142 S.E. 2d 687 (1965). A writ of error *coram nobis* "will lie to any court of record, and as our county courts are courts of record we cannot conceive of a reason why one of them may not correct an error of fact in its judgment, upon a writ of error brought before itself." *Roughton v. Brown,* 53 N.C. 393, 394 (1861). The Reidsville Recorder's Court is a court of record, Chapter 104, Public Laws of North Carolina, Session 1909, and therefore defendant's petition for writ of error *coram nobis* should in all events have been addressed to the court in which he was tried. For these reasons the decision of the Court of Appeals, although based on other grounds, affirming the order of the superior court denying defendant's application was correct. Even so, to the end that the question defendant seeks to present may be discussed sufficiently to dispose of this appeal on its merits, we treat the appeal itself as an application to this Court for permission to petition the Reidsville Recorder's Court for the issuance of a writ of error *coram nobis.*

[6]  Defendant poses the following question for decision: Is a conviction of willful failure to support illegitimate children a "serious misdemeanor" so as to require appointment of counsel or intelligent waiver thereof under the Sixth and Fourteenth Amendments to the United States Constitution? The answer is no.

Defendant was charged with and convicted of the willful neglect and refusal to support and maintain his illegitimate children, a violation of G.S. 49-2. The maximum punishment

provided by law for this offense is six months in prison. G.S. 49-8. The court is authorized to fix by order a specific sum of money to be paid by defendant for the support and maintenance of the child or children in question and to suspend the prison sentence on condition the periodic payments are made as ordered. G.S. 49-7.

[7]  Defendant argues that in addition to the maximum punishment of six months other serious consequences are involved, in that, once the issue of paternity is established it cannot again be contested and defendant may then be tried again and again for willful failure to support and may receive successive sentences of six months until all children involved reach eighteen years of age. To avoid those consequences, defendant says he must pay in excess of $9300 under the judgment pronounced in this case. He contends these are serious consequences by any reasonable standard and compel the conclusion that one charged with a violation of G.S. 49-2 is charged with a "serious offense" requiring appointment of counsel for indigent defendants or intelligent waiver thereof.

[7, 8]  Defendant's position is unsound. The only prosecution authorized by Chapter 49 of the General Statutes is grounded on the willful neglect or refusal of *any* parent to support and maintain his or her illegitimate child—the paternity itself is no crime. *State v. Robinson,* 245 N.C. 10, 95 S.E. 2d 126 (1956) ; *State v. Ellis,* 262 N.C. 446, 137 S.E. 2d 840 (1964). The question of paternity is merely incidental to the prosecution for nonsupport and involves no punishment. The fact that defendant may be prosecuted for a second or third willful failure to support his illegitimate children and receive successive sentences of six months has no logical relevance to the question posed. Every man is subject to prosecution for repeated violations of any criminal statute. Furthermore, the support payments are not part of the punishment. All men have a moral duty to support their children—legitimate or illegitimate—and G.S. 49-2 makes this moral obligation legal and enforceable with respect to illegitimate children. *State v. Tickle,* 238 N.C. 206, 77 S.E. 2d 632 (1953). All these "consequences" are merely side effects that may or may not materialize. They have no relevance on the question of punishment. The only *punishment* authorized by law for the willful failure or neglect to support an illegitimate child is found in G.S. 49-8 and is limited at most to six months in prison.

**[9, 10]**  Whether an offense is *petty* or *serious* is measured, in both state and federal courts, by the punishment authorized by law for the particular offense in question. 18 U.S.C. § 1; G.S. 7A-451. Under these statutory yardsticks any crime the maximum authorized punishment for which does not exceed six months in prison is a petty offense for which the offender may be tried without a jury and without the assistance of counsel. *State v. Morris,* 275 N.C. 50, 165 S.E. 2d 245 (1969) ; *Blue Jeans Corp. v. Clothing Workers,* 275 N.C. 503, 169 S.E. 2d 867 (1969) ; *Cheff v. Schnackenberg,* 384 U.S. 373, 16 L.Ed. 2d 629, 86 S.Ct. 1523 (1966) ; *Dyke v. Taylor Implement Mfg. Co.,* 391 U.S. 216, 20 L.Ed. 2d 538, 88 S.Ct. 1472 (1968) ; *Duncan v. Louisiana,* 391 U.S. 145, 20 L.Ed. 2d 491, 88 S.Ct. 1444 (1968) ; *Bloom v. Illinois,* 391 U.S. 194, 20 L. Ed. 2d 522, 88 S. Ct. 1477 (1968).

We hold that defendant was charged with a petty offense and his trial without counsel did not violate his constitutional right to counsel under the Sixth and Fourteenth Amendments.

Defendant's appeal, treated as a petition to this court for leave to file a petition in the Recorder's Court of Reidsville for a writ of error *coram nobis,* is denied. The decision of the Court of Appeals affirming the denial order of Godwin, S.J., is

AFFIRMED.

Justice SHARP dissenting:

Defendant, an indigent, was convicted in the Reidsville Recorder's Court of a violation of G.S. 49-2. At the trial he was not afforded counsel. The majority of the court deny him permission to petition the Recorder's Court for writ of error *coram nobis* upon the premise that a man charged for the first time with the willful failure to support his illegitimate child is not charged with a "serious offense" and, therefore, has no constitutional right to the assistance of counsel. The offense is labeled "petty" under the rule enunciated in *State v. Morris,* 275 N.C. 50, 165 S.E. 2d 245. A serious offense is therein defined as "one for which the authorized punishment exceeds six months' imprisonment and a $500 fine." All other offenses are declared to be "petty." *Id.* at 59, 165 S.E. 2d at 251. For the reasons hereinafter stated it is my view that this rule is inapplicable to the *first* prosecution of a defendant for the willful failure to support his illegitimate child.

Proceedings to compel a parent to support his illegitimate child were once regarded as being civil in nature. The legislature of 1933, however, changed the approach to the problem. "Now the proceeding is criminal." *State v. Robinson,* 245 N.C. 10, 14, 95 S.E. 2d 126, 129; P. L. 1933, Ch. 228; G.S. 49-2; *State v. Ellis,* 262 N.C. 446, 137 S.E. 2d 840.

In order to convict a man of violating G.S. 49-2, the State must prove beyond a reasonable doubt that (1) he is the father of the illegitimate child named in the warrant; and (2) he has willfully, that is, intentionally and without justification, failed to support and maintain the child after notice and request for support. *State v. Mason,* 268 N.C. 423, 150 S.E. 2d 753; *State v. Ellison,* 230 N.C. 59, 52 S.E. 2d 9; *State v. Stiles,* 228 N.C. 137, 44 S.E. 2d 728.

In such a prosecution, the issue which must first be determined is "whether or not the defendant is a parent of the child on whose behalf the proceeding is instituted." G.S. 49-7; *State v. Robinson,* 245 N.C. 10, 95 S.E. 2d 126; *State v. Robinson,* 236 N.C. 408, 72 S.E. 2d 857. It is frequently said that being the father of an illegitimate child, without more, is not a crime, for a man does not violate G.S. 49-2 until he willfully refuses to support the child. The issue of paternity, however, cannot be separated from the issue of guilt or innocence of the offense of willful failure to support an illegitimate child. The establishment of defendant's fatherhood is an indispensable prerequisite to conviction, paternity being the first essential element of the crime. To characterize that issue as "merely incidental to the prosecution" is totally unrealistic.

G.S. 49-2 creates a continuing offense. In *State v. Johnson,* 212 N.C. 566, 194 S.E. 319, the defendant was tried in the Superior Court of Guilford County in 1936 upon the charge of willful failure to support his illegitimate child. Upon separate issues the jury found (1) that he was the father of the child named in the warrant; (2) that he had willfully failed to support it; and (3) that defendant was guilty as charged. The court imposed a six-months sentence, which defendant served. In 1937, when he was again charged with willfully failing to support the child, he entered a plea of former jeopardy. The trial court rejected the plea and, upon appeal, this Court affirmed the defendant's second conviction. The decision was that G.S. 49-2 created a continuing offense, and defendant's

prior conviction under it was no bar to successive prosecutions when, after release from imprisonment previously imposed, he willfully failed to support the child. *Accord, State v. Ellis, supra; State v. Womack,* 251 N.C. 342, 111 S.E. 2d 332; *State v. Smith,* 246 N.C. 118, 97 S.E. 2d 442; *State v. Ferguson,* 243 N.C. 766, 92 S.E. 2d 197; *State v. Wilson,* 234 N.C. 552, 67 S.E. 2d 748.

Once it has been judicially determined in a prosecution under G.S. 49-2 that the defendant is the father of the illegitimate child in question, either by a verdict of guilty or by an affirmative answer to the issue of paternity, that issue is *res judicata. State v. Ellis, supra; State v. Robinson,* 245 N.C. 10, 95 S.E. 2d 126; *State v. Clonch,* 242 N.C. 760, 89 S.E. 2d 469. From a verdict finding the issue of paternity against a defendant he has the same right to appeal as though he had been found guilty of the crime of willful failure to support his illegitimate child. G.S. 49-7; *State v. Clement,* 230 N.C. 614, 54 S.E. 2d 919. However, as long as the finding remains unreversed, it is conclusive upon the issue of paternity; evidence bearing upon that issue is precluded in any subsequent prosecution.

After a defendant's first conviction under G.S. 49-2 the only issue in any subsequent prosecution under that statute is whether he has willfully failed to support the child. His obligation will continue until the child becomes 18 years old, and successive convictions will subject him to successive six-months prison terms. G.S. 49-8 makes no provision for a fine but authorizes the court to suspend the prison sentence upon conditions calculated to make the defendant support his child. Thus, by any realistic standard, it would seem that the *first* prosecution under G.S. 49-2 is a prosecution for "a serious offense." In such a prosecution, when the defendant is once convicted, or the issue of paternity found against him, the State has cleared its chief hurdle (one almost never encountered in prosecutions for the benefit of legitimate children). *Subsequent* prosecutions for willful nonsupport come under the head of routine business and will be controlled by the rule of *State v. Morris, supra.*

In Morris, the Court formulated an arbitrary, mechanical rule which will fairly accomplish its purpose in the vast majority of prosecutions for misdemeanors for which the punishment does not exceed imprisonment for six months and a fine of $500. Ordinarily these are "single-shot" prosecutions and, as applied to them, I approve the rule. However, the *Morris* rule does not fit this case. It cannot be applied fairly to a first prosecution

under a statute creating a continuing offense when the trial finally adjudicates the essential issue which will determine the State's right to institute subsequent prosecutions. Such is the case here. The issue of paternity, answered against defendant, provides the indispensable basis for any subsequent prosecution under G.S. 49-2 and is *res judicata* as to one of the two essential elements of the crime. In common parlance, "It's at that first trial a man needs a lawyer." If the defendant has the assistance of counsel at the trial in which his paternity is established, thereafter he can reasonably be expected to fend for himself in the event he is again charged with the willful failure to support his child.

For the reasons stated, I vote to grant defendant leave to petition the Reidsville Recorder's Court for a writ of error *coram nobis.*

Chief Justice BOBBITT and Justice HIGGINS join in dissenting opinion.