SHIRLEY T. TIDWELL v. DAVID BOOKER

No. 7526DC384

(Filed 19 November 1975)

1. **Evidence § 22; Rules of Civil Procedure § 36— prosecution for nonsupport — determination of paternity — no judicial admission in subsequent civil action for child support**

Evidence of a defendant's conviction in a criminal prosecution for the very acts which constitute the basis of the liability sought to be established in a civil suit is not admissible unless such conviction is based on a plea of guilty. Moreover, purported "admissions" made in a criminal prosecution cannot be introduced as "judicial admissions" in any subsequent action. G.S. 1A-1, Rule 36(c).

2. **Parent and Child § 7— duty of parent to support child**

All men have a moral duty to support their children, legitimate or illegitimate, and to compel compliance with the duty of support, courts may impose a penal sanction, suspended on condition of payment of child support.

3. **Judgments § 44— nonsupport prosecution — subsequent civil action for child support — collateral estoppel**

Where defendant was tried and convicted in 1963 for wilful nonsupport of his illegitimate child and the judgment recited defendant's admission of paternity, the trial court in a 1974 civil action for child support did not err in determining that the 1963 prosecution conclusively decided the issue of paternity and had the effect of collateral

Tidwell v. Booker

estoppel in the civil action, since (1) there was identity of subject matter in that both actions were instituted to compel support from the putative father of plaintiff's illegitimate daughter, (2) there was privity of parties in that plaintiff in the civil action was the prosecuting witness in the criminal case and the prosecuting witness had a critical financial interest in the outcome of the case, and (3) both actions incidentally involved the issue of paternity, and that issue was considered and determined in the criminal case.

4. **Bastards § 8; Judgments § 37— finding of paternity — res judicata as to future prosecutions**

   The N. C. Supreme Court has held that a finding of paternity in one prosecution for wilful failure to support is *res judicata* as to future prosecutions, and use of the word "prosecution" by the Court does not necessarily limit a finding of estoppel to subsequent criminal actions.

5. **Bastards § 10— civil action for child support — paternity not in issue — no jury trial**

   In an action for support of plaintiff's illegitimate child, defendant was not entitled to a jury trial on the issue of paternity, though he demanded one, since there was no issue of paternity in this action and all that remained for determination was the amount of award to be granted to the plaintiff. G.S. 49-14.

6. **Attorney and Client § 7; Bastards § 10— child support for illegitimate child — award of periodic payments and attorney fees proper**

   In an action for support of plaintiff's illegitimate child and for attorney fees, the trial court did not err in awarding plaintiff continuing periodic support for the child and attorney fees, since support for an illegitimate child is to be determined and enforced in the same manner as if the child were legitimate, the court has statutory authority to award periodic payments for the support of a legitimate child, and the trial court in this action found that defendant had refused to provide adequate support under the circumstances and that plaintiff was an interested party acting in good faith who had insufficient means to defray the expense of the action. G.S. 49-15; G.S. 50-13.4; G.S. 50-13.6.

7. **Bastards § 10— child support award in lump sum — award for reimbursement proper**

   In an action seeking periodic child support payments and reimbursement for amounts already spent for child support, the trial court did not err in awarding plaintiff arrearages of over $4000, since, under G.S. 50-13.4, the court may, in addition to periodic payments, order payment of lump sum amounts, and this lump sum award can be awarded for the purpose of reimbursement.

APPEAL by defendant from *Robinson, Judge,* and *Hicks, Judge.* Judgments entered 24 January 1975 and 16 April 1975 in District Court, MECKLENBURG County. Heard in the Court of Appeals 3 September 1975.

The genesis of this present appeal dates back to December 1963 when the plaintiff mother in the present civil action swore out a warrant charging the defendant with the willful failure and refusal to support his and her illegitimate child. From a plea of not guilty, the then Domestic Relations and Juvenile Court Judge rendered a verdict of guilty and stated in the judgment entered that "the court finds as a fact, and the defendant admits, that he is the father of a child, Claudia Ann, born out of wedlock to the prosecuting witness, November 17, 1963." Sentence of six months was suspended upon the condition that the defendant pay $8 per week for child support. Defendant consented to the condition. The Domestic Relations and Juvenile Court retained the cause for further orders.

The plaintiff brought the present independent civil action in October 1974 in the District Court for Mecklenburg County instead of proceeding by way of a criminal action. Plaintiff claimed that since 1963, when defendant was conclusively declared the biological father, defendant had rendered virtually no support save sporadic small payments totalling approximately $211 and occasional gifts. Plaintiff averred that she had expended $4,169 for child support and prayed for reimbursement, additional support of $50 per week and reasonable attorney fees.

Defendant's answer denied paternity and claimed that notwithstanding the 1963 judgment he had never admitted paternity. Moreover, defendant maintained that he was neither represented by counsel in the 1963 prosecution nor intelligently waived his right to counsel therein. Thus, defendant argued that plaintiff was entitled to no support and that any money or gifts given to the child evinced defendant's sense of good will and was not indicative of his recognition of paternal obligations.

The District Court received into evidence the 1963 warrant and judgment and held that in view of the 1963 prosecution and the judgment rendered therein, the issue of paternity had been conclusively decided in that criminal action and had the effect of collateral estoppel in the then pending civil action. The District Court entered an order requiring defendant to make weekly payments of $33 and pay plaintiff's attorney fees of $350.

Plaintiff then moved for summary judgment on the lump sum claim. No additional evidence was submitted by either party, and the District Court granted the motion and further ordered

defendant to pay $4,169 to the plaintiff and taxed an additional $750 against defendant for plaintiff's attorney fees.

Other facts necessary for decision are set out in the opinion.

*Hicks & Harris, by Tate K. Sterrett, for plaintiff appellee.*

*Reginald L. Yates for defendant appellant.*

MORRIS, Judge.

[1]    Defendant first contends that the District Court erred in considering and making findings of fact and conclusions of law based upon defendant's previous criminal conviction. Defendant, in support of his position, cites the North Carolina rule that " . . . evidence of a defendant's conviction in a criminal prosecution for the very acts which constitute the basis of the liability sought to be established in a civil suit is not admissible unless such conviction is based on a plea of guilty." *Beanblossom v. Thomas,* 266 N.C. 181, 185, 146 S.E. 2d 36 (1966). The rationale supporting this rule is that "while the same facts may be involved in two cases, one civil and the other criminal, the parties are necessarily different, for, whereas one action is prosecuted by an individual, the other is maintained by the state." *Trust Co. v. Pollard,* 256 N.C. 77, 79-80, 123 S.E. 2d 104 (1961).

Ancillary to the principles stated in *Beanblossom* and *Pollard* is the doctrine of mutuality which traditionally requires " . . . identity of parties, of subject matter and of issues . . . " in order to invoke the application of *res judicata* or collateral estoppel. *Moore v. Young,* 260 N.C. 654, 657, 133 S.E. 2d 510 (1963). Thus, to distinguish the facts in this case from the principles articulated in cases such as *Beanblossom, Pollard* and *Moore,* appellee plaintiff argues that: (1) paternity, not being the offense for which defendant was tried and convicted, raises the defendant's acceptance of the finding of paternity in the 1963 judgment to the status of a binding judicial admission; and (2) alternatively, collateral estoppel should apply under either an exception to the mutuality doctrine or a broad reading of the rule.

We do not agree with the plaintiff appellee's first counterargument that the finding of paternity in the 1963 judgment is admissible in the 1974 civil action as a judicial admission. Pursuant to G.S. 1A-1, Rule 36(c), "any admission made pursuant

Tidwell v. Booker

to this rule is for the purpose of the pending action only and neither constitutes an admission by the party for any other purpose nor may the admission be used against him in any other proceeding." Federal courts, construing basically the same rule in the Federal Rules of Civil Procedure, have long held that the admission is limited to the action in which it arose. *Woods v. Robb,* 171 F. 2d 539, 541 (5th Cir. 1948) ; *Weis-Fricker Emp. & Imp. Corp. v. Hartford Acc. & I. Co.,* 143 F. Supp. 137, 149 (N.D. Fla. 1956) ; *Walsh v. Connecticut Mut. Life Ins. Co.,* 26 F. Supp. 556, 571-573 (E.D. N.Y. 1939) ; But cf: *International Carbonic Eng. Co. v. Natural Carb. Prod.,* 57 F. Supp. 248, 253 (S.D. Cal. 1944), wherein the plaintiff, who brought forward certain "admissions" in answering defendant's interrogatories, was bound by those responses which at least partially formed the basis of a counterclaim raised by defendant against the plaintiff.

Plaintiff also argues that *Beanblossom* is not applicable because the defendant's paternity was merely ancillary to the offense actually charged in 1963, to wit: willful failure and refusal to support. North Carolina's case law on this point is not settled in this area. In *State v. Green,* 277 N.C. 188, 193, 176 S.E. 2d 756 (1970), Justice Huskins, speaking for the majority, wrote that in a prosecution for willful refusal to support "the question of paternity is merely incidental to the prosecution for nonsupport and involves no punishment. . . . [T]he paternity itself is no crime." See also: *State v. Robinson,* 236 N.C. 408, 411, 72 S.E. 2d 857 (1952). Thus, the majority of our Supreme Court maintains that "[t]he mere begetting of a child is not a crime. The question of paternity is incidental to the prosecution for the crime of nonsupport—a preliminary requisite to conviction." *State v. Ellis,* 262 N.C. 446, 449, 137 S.E. 2d 840 (1964). (However, see vigorous dissent of Sharp, J. (now C.J.), joined by Chief Justice Bobbitt and Associate Justice Higgins in *State v. Green, supra,* at 194-197.) It appears that the present status of our case law would require a finding that paternity was merely incidental to the prosecution for nonsupport. Nonetheless, G.S. 1A-1, Rule 36(c) requires that we reject plaintiff's first argument.

[2, 3] We now must determine whether this case meets the collateral estoppel requirements of mutuality of subject matter, parties and issues.

---

**Tidwell v. Booker**

---

Our Supreme Court has held that "[a]ll men have a moral duty to support their children—legitimate or illegitimate. . . . " *State v. Green, supra,* at 193. To compel compliance with the duty of support, our courts may, as the court in fact did in 1963, impose a penal sanction, suspended on condition of payment of child support. *Id.* at 193. When the plaintiff returned to the court in 1974, her intent was the same as in 1963; namely, compel assistance from the putative father of the plaintiff's illegitimate daughter. When stripped of the broader contexts of a criminal versus civil action, the two actions can be viewed as essentially similar causes. Both are designed to compel support. One uses the office of the prosecutor and the threat of a jail sentence and the other wields the traditional powers and authority inherent in our civil courts. Should the defendant disobey the edicts and orders of the District Court, he could be held in contempt and theoretically wind up in the same jailhouse as if he were found guilty of the criminal offense of nonsupport. In both situations the same goal is attained: forcing a nonsupporting parent to meet his parental support obligations. The uniquely hybrid nature of the prosecution for willful failure to support is inherent in the history of this particular cause of action. At one time the action was considered civil in nature. *State v. Green, supra,* at 195. The peculiar interrelating roles and interests of the various parties to the prosecution are easily perceived. The State and the prosecuting witness, in this case the mother of the child, both seek support from the recalcitrant father. The State wants to force his support in order to avoid bringing the child onto the State's welfare rolls as a charge of the State, and the mother wants the father to help her meet the financial burdens of parenthood. In a sense, therefore, the State is really bringing the action *ex rel* for the benefit of the prosecuting witness and is joining with her in reaching the very same result: support and assistance from the father.

Specifically, when examining two actions for purposes of mutuality of parties, we should not be constrained by the mere forms of the action but should look beneath the surface to determine the substance of the matter. Thus, "whether or not a person was a party to a prior suit 'must be determined as a matter of substance and not of mere form. . . . ' 'The courts will look beyond the nominal party whose name appears on the record as plaintiff and consider the legal questions raised as they may affect the real party or parties in interest.' " (Citations omitted.) *King v. Grindstaff,* 284 N.C. 348, 357, 200 S.E. 2d 799

(1973). The party who is able to control and shape the development of a lawsuit, " ' . . . individually or in cooperation with others, is bound by the adjudications of litigated matters as if he were a party if he has proprietary interest or financial interest in the judgment or *in the determination of a question of act [sic] or a question of law with reference to the same subject matter, or transaction;* if the other party has notice of his participation, the other party is equally bound.' " (Citations omitted.) *Enterprises .v. Rose,* 283 N.C. 373, 377, 196 S.E. 2d 189 (1973). Though *Rose* turned on the question of *res judicata,* for purposes of testing privity of parties, it is equally persuasive in this case which deals with collateral estoppel. It points out that privity or mutuality of parties essentially goes to the question of protection. Once a party has fully litigated a question against a particular litigant, he should not have to fear relitigation against that same party because that party has merely changed hats. Here the defendant, brought to court at the insistence of the mother, had a full opportunity to contest paternity in 1963 and attack the prosecuting witness's claim and if he believed the judgment was wrong in stating his admission of paternity, he should have timely attacked that judgment. Once he let the 1963 judgment go by unchallenged he was bound. "Normally, no matter how erroneous a final valid judgment may be on either the facts or the law, it has binding . . . collateral estoppel effect in all courts, Federal and State, on the parties and their privies." *King v. Grindstaff, supra,* at 360. Moreover, the plaintiff, though not technically in control of the 1963 prosecution, was essential to its success as the prosecuting witness and in fact stood in the position of obvious beneficiary of its successful culmination. Thus, her financial interest was obvious and critical. In view of the unique nature of the two causes of action and the unique interrelationship of the State in the affairs of an illegitimate child and the mother of that child, the requisite privity of parties existed for purposes of mutuality and collateral estoppel.

Next, we must determine whether there was identity of issues.

"In determining whether collateral estoppel is applicable to specific issues, certain requirements must be met: (1) The issues to be concluded must be the same as those involved in the prior action; (2) in the prior action, the issues must have been raised and actually litigated; (3) the

issues must have been material and relevant to the disposition of the prior action; and (4) the determination made of those issues in the prior action must have been necessary and essential to the resulting judgment. *King v. Grindstaff, supra,* at 358.

Thus, " 'if the record of the former trial shows that the judgment could not have been rendered without deciding the particular matter, it will be considered as having settled that matter as to all future actions between the parties.' " (Citations omitted). *Id.* at 359. In the case at bar, paternity was an essential feature of the 1963 case and the defendant not only had the requisite opportunity for a hearing on the issue but in fact had that very matter considered and determined. "To make the plea effective it is necessary not only that the party have an opportunity for a hearing [on the question] but that the identical question must have been considered and determined. . . ." *Crosland-Cullen Co. v. Crosland,* 249 N.C. 167, 170, 105 S.E. 2d 655 (1958). We have no record of the 1963 prosecution, but we do have the judgment rendered therein which states, *inter alia,* that defendant "admits" paternity and thus it would appear that the question was in fact addressed by all the parties in that action.

[4] It also should be noted that the North Carolina Supreme Court has already held that a finding of paternity in one prosecution for willful failure to support is *res judicata* as to future prosecutions. *State v. Ellis, supra; State v. Clonch,* 242 N.C. 760, 761, 89 S.E. 2d 469 (1955) ; *State v. Green, supra,* Justice Sharp's dissent at 196. The fact that the Court speaks in terms of a subsequent "prosecution" does not mean we necessarily are limited in finding an estoppel to subsequent criminal actions brought on the heels of an earlier prosecution.

We have little difficulty in finding a parallel between the situation before us in this case and that before the Court in *Taylor v. Taylor,* 257 N.C. 130, 125 S.E. 2d 373 (1962). There the plaintiff instituted an action for absolute divorce. Defendant, answering, admitted the separation but averred that it was brought about by plaintiff's willful abandonment of her. For a further answer and defense and as a cross action for alimony without divorce defendant alleged that on 18 June 1958, plaintiff willfully and unlawfully and without just cause or provocation on part of defendant, abandoned her and the minor children. Additionally, she alleged that after the abandonment and

on 8 September 1958, plaintiff was convicted of abandonment and nonsupport of defendant and their three children. Copy of the court minutes relating to the prosecution was attached to her answer. Plaintiff replied, admitting that he was found guilty of abandonment and nonsupport but averred that he denied his guilt then and that he still contended he was not guilty. Plaintiff stipulated that no appeal was taken from the conviction. At trial, defendant moved for judgment on the pleadings dismissing plaintiff's action. The court granted the motion, and plaintiff's action was dismissed. On appeal, a unanimous Court, speaking through Bobbitt, J. (later C.J.), affirmed but limited the holding to a factual situation where the plaintiff is seeking to profit from criminal conduct for which he has been prosecuted and convicted. The Court, with approval, quoted from *Eagle, Etc. Ins. Co. v. Heller*, 149 Va. 82, 140 S.E. 314 (1927), where the Court "took the view that, to adhere to the general and traditional rule under such circumstances, 'would be a reproach to the administration of justice.' " *Taylor v. Taylor, supra,* at 135.

We think the following language of the Court is particularly appropriate here:

"Technically, the parties in the criminal prosecution were different. Even so, the issue was identical, and the plaintiff, in the criminal action, had his day in court with reference to such issue. Compare *Crosland-Cullen Co. v. Crosland,* 249 N.C. 167, 105 S.E. 2d 655, and cases cited. While the conduct for which plaintiff was convicted constitutes an offense against society, such conduct was made criminal to afford protection to the wilfully abandoned wife. In such criminal prosecution, the wife, although not technically a party, is the person upon whose testimony the State, in large measure, must rely; and the criminal prosecution is based on and arises from the rights and obligations subsisting between the prosecutrix (wife) and the defendant (husband)." *Id.* at 135.

Notwithstanding *Beanblossom,* we hold that the rules articulated in *Ellis* and *Clonch* are applicable to subsequent *civil* actions for willful failure to support a minor child where paternity was fully addressed in the prior *criminal prosecution* for willful failure to support. This holding is necessarily limited to the peculiar hybrid nature of the particular cause of action

raised in these cases. Thus, no error was committed by the District Court in considering the 1963 prosecution.

[5, 6]  Defendant next contends that the District Court erred in awarding plaintiff continuing periodic support for the child and attorney fees. Specifically, defendant asserts that in any civil action, brought under G.S. 49-14, a jury trial on the paternity issue is required if demanded. This question must be answered, claims defendant, before the judge can enter any orders with respect to support. Here defendant in fact demanded a jury trial and claims that the judge should have entered no orders pending a jury's deliberation on the matter of paternity. We disagree. Our Court has noted previously that "in actions under G.S. 49-14, the jury decides only the factual issue of paternity, and the court decides what payments should be awarded for the support of the child." *Searcy v. Justice* and *Levi v. Justice*, 20 N.C. App. 559, 564, 202 S.E. 2d 314 (1974); cert. denied 285 N.C. 235 (1974); also see G.S. 49-15. Here, there was no issue of paternity for the jury to decide and all that remained for determination was the amount of award to be granted to the plaintiff, assuming, of course, that there was a finding of willful refusal and failure to support. Pursuant to G.S. 49-15, support for an illegitimate child is to be ". . . determined and enforced in the same manner, as if the child were the legitimate child of such father and mother." Under G.S. 50-13.4, the court may award periodic payments for the support of a legitimate child, and under G.S. 50-13.6 may award reasonable attorney fees. However, to award attorney fees, the court must ". . . find as a fact that the party ordered to furnish support has refused to provide support which is adequate under the circumstances existing at the time of the institution of the action or proceeding. . . ." G.S. 50-13.6. Moreover, the interested, aggrieved party must have brought the action under a good faith belief in her insufficient means to defray the expense of the litigation. G.S. 50-13.6. In its order, the District Court stated that the "defendant has refused to provide support which is adequate under the circumstances existing at the time of the institution of this action . . . [and] plaintiff is an interested party acting in good faith who has insufficient means to defray the expense of this action." We find no error in the District Court's actions with respect to periodic support and attorney fees.

[7]  Defendant next contends that the court erred in awarding plaintiff arrearages in the amount of $4,169. Under G.S. 50-13.4,

the court may, in addition to periodic payments, order payment of lump sum amounts. Moreover, we hold this lump sum award can be awarded for the purpose of reimbursement. 3 Lee, N. C. Family Law, § 229 (3d ed. 1963), at p. 57; *Wells v. Wells,* 227 N.C. 614, 44 S.E. 2d 31 (1947).

We have considered the other contentions raised by defendant and find them to be without merit.

Affirmed.

Judges VAUGHN and CLARK concur.